# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5403 | **DATE** | 3/3/2004 |
| **CASE TITLE** | Kempner Mobile Elec., Inc. vs. Southwestern Bell Mobile Syst. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. For the reasons stated herein, Cingular's motion for judgment as a matter of law or, in the alternative, for a new trial (doc. # 115) is GRANTED in part and DENIED in part as follows: the Court DENIES Cingular's motion for judgment as a matter of law on Kempner Mobile's fraud and tortious interference claims; the Court GRANTS Cingular's motion for a new trial on Kempner Mobile's tortious interference claim and on Cingular's equipment receivable counterclaim; and in all other respects the Court DENIES Cingular's motion for a new trial. The matter is set for a status conference on 03/30/04 at 9:00 a.m. At that time, the parties are to present to the Court their proposal(s) for the procedures and schedules to use in resolving the remaining liability and damages issues.

*[signature]*

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| mm | courtroom deputy's initials | | Date/time received in central Clerk's Office |
|---|---|---|---|

number of notices

MAR 0 4 2004

date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

**Document Number**

125

U.S. DISTRICT COURT.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**

**MAR 0 4 2004**

KEMPNER MOBILE ELECTRONICS, INC.,    )
an Illinois corporation,    )
    )
    )
Plaintiff,    )
    )    Case No. 02 C 5403
vs.    )
    )    Magistrate Judge Schenkier
SOUTHWESTERN BELL MOBILE    )
SYSTEMS, LLC, d/b/a CINGULAR    )
WIRELESS f/k/a SOUTHWESTERN BELL    )
MOBILE SYSTEMS, INC. d/b/a CELLULAR    )
ONE-CHICAGO,    )
    )
Defendant.    )

## MEMORANDUM OPINION AND ORDER[1]

On November 17, 2003, a jury trial commenced on the liability phase of the dispute between

Kempner Mobile Electronics, Inc. ("Kempner Mobile") and Cingular. At trial, Kempner Mobile

presented two claims of breach of contract, as well as claims of common law fraud and tortious

interference with economic advantage; Cingular presented two counterclaims for breach of contract.[2]

At the close of Kempner Mobile's case in chief, Cingular moved for judgment as a matter of law

under Federal Rule of Civil Procedure 50(a) on one of Kempner Mobile's two contract claims, and

on Kempner Mobile's claims of fraud and tortious interference. The Court denied the motion in its

---

[1]By consent of the parties and pursuant to 28 U.S.C. § 636(c), the case has been assigned to this Court for all proceedings, including the entry of final judgment (doc. ## 5-7).

[2]Other claims originally advanced by the parties were disposed of on summary judgment, *see Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems, LLC*, 02 C 5403, 2003 WL 22595263 (N.D. Ill., Nov. 7, 2003), or were withdrawn before trial.

entirety (*see* Tr. 541, 547, 554). Cingular did not renew its Rule 50(a) motion at the close of its case in chief, or at any other time prior to the submission of the case to the jury.

On November 21, 2003, the case was submitted to the jury. After more than four hours of deliberation (*see* Tr. 937-39), the jury returned verdicts in favor of Kempner Mobile and against Cingular on all four of Kempner Mobile's contract and tort claims, and on both of Cingular's counterclaims (Tr. 941-42). After the jurors were polled, at Cingular's request, and they reaffirmed their verdicts, the Court entered judgment on the verdicts (Tr. 942-43).

Presently before the Court is Cingular's motion for judgment as a matter of law or, in the alternative, for a new trial (doc. # 115). In its motion, Cingular asks the Court to undo the jury verdicts and to enter judgment as a matter of law for Cingular, under Federal Rule of Civil Procedure 50(b), on Kempner Mobile's fraud and tortious interference claims (but not on the verdicts for Kempner Mobile on the two contract claims, or on Cingular's two counterclaims). In the alternative, Cingular moves for a new trial, under Federal Rule of Civil Procedure 59(a), on the tortious interference and fraud verdicts, as well as on all the other verdicts returned by the jury.

The motion now has been fully briefed, and on February 24, 2004, the Court heard oral argument. For the reasons set forth below, the Court denies Cingular's Rule 50(b) motion. The Court grants Cingular's alternative motion under Rule 59(a) for a new trial on Kempner Mobile's tortious interference claim and on Cingular's counterclaim for failure to pay for equipment. In all other respects, Cingular's Rule 59(a) motion is denied.

We begin with Cingular's Rule 50(b) motion. Rule 50(b) states in pertinent part:

> If, for any reason, the Court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the Court is considered to have submitted the action to the jury subject to the Court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than ten days after entry of judgment – and may alternatively request a new trial or join a motion for new trial under Rule 59.

Fed. R. Civ. 50(b). Seventh Circuit opinions have differed as to whether this language expressly requires that a Rule 50(a) motion for judgment as a matter of law be renewed at the close of all the evidence, *see Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209, 212 (7th Cir. 1995), citing *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1139-40 (7th Cir. 1994) (the "plain language of Rule 50(b) precludes judgment as a matter of law where party failed to renew its motion at the close of all the evidence"), or whether that requirement is instead only implicit. *See Szmaj v. American Telephone and Telegraph Co.*, 291 F.3d 955, 957 (7th Cir. 2002) ("Rule 50(b) of the Federal Rules of Civil Procedure implies (no stronger word is possible) that a motion for judgment as a matter of law must indeed be renewed at the close of all the evidence if the moving party wants to obtain such relief should the jury bring in a verdict against him"). Either way, it is clear that the Seventh Circuit has strictly adhered to this requirement. *See, e.g., Eastern Natural Gas Corp. v. Aluminum Co. of America*, 126 F.3d 996, 1000 (7th Cir. 1997) (in *Umpleby*, "we ruled unequivocally that in order to preserve a motion for judgment as a matter of law which was not granted by the trial court, the motion must be renewed at the close of all the evidence"); *Mid America Tablewares, Inc. v. Mogi Trading, Co.*, 100 F.3d 1353, 1364 n.5 (7th Cir. 1996) (reaffirming that the Seventh Circuit has "read Rule 50 strictly to require that the renewal of a Rule 50 motion at the close of all evidence");

3

*Umpleby*, 69 F.3d at 212 ("[i]n order to preserve its motion for judgment as a matter of law, P&B had to renew its motion at the close of all the evidence"); *Downes*, 41 F.3d at 1139-40 (noting that the practice of declining to apply this requirement "rigidly" was abandoned in light of the 1991 amendments to Rule 50 that made clear that the Rule is to be applied strictly).

In this case, Cingular presented a Rule 50(a) motion at the close of Kempner Mobile's case in chief. However, Cingular failed to renew that motion at the close of all the evidence, and before the case was submitted to the jury. Thus, under the foregoing authorities, Cingular has waived its right to present a Rule 50(b) motion asking the Court to undo the fraud and tortious interference verdicts, and to enter judgment in favor of Cingular on those claims.

Cingular presents two arguments to avoid that result. *First*, Cingular argues that more recent decisions indicate that the Seventh Circuit no longer strictly requires that a motion for judgment as a matter of law be renewed at the close of all evidence as a prerequisite to filing a post-trial motion under Rule 50(b), citing *Laborer's Pension Fund v. A&C Environmental, Inc.*, 301 F.3d 768 (7th Cir. 2002), and *Szmaj v. American Telephone and Telegraph Co.*, 291 F.3d 955 (7th Cir. 2000) (Cingular Reply Mem. at 2-3). *Second*, Cingular argues that Kempner Mobile has suffered no prejudice from Cingular's failure to renew its motion for judgment as a matter of law at the close of all the evidence (*Id.* at 3-6). The Court does not find either argument persuasive.

The Seventh Circuit authorities cited by Cingular do not abandon the requirement that a party must renew a motion for judgment as a matter of law at the close of all the evidence if that party wishes to preserve a right to pursue a post-trial Rule 50(b) motion. In *A&C Environmental*, the Seventh Circuit held that the plaintiffs had not waived their right to submit a post-trial Rule 50(b) motion by failing to move for judgment as a matter of law at the close of all the evidence. The

4

Seventh Circuit explained that the plaintiffs had moved for judgment as a matter of law after both sides had put on their cases in chief, but before a brief rebuttal case was presented. 301 F3d at 776. The appeals court distinguished that factual scenario from those presented in *Mogi Trading*, *Umpleby*, and *Downes*, in which the defendants had moved for judgment as a matter of law at the end of the plaintiff's case and did not renew the motion after the defendants had put on their own case. *Id.* at 776 n.6. The Seventh Circuit did not abandon the *Mogi Trading/Umpleby/Downes* line of authority, but simply found that the factual scenario presented in *A&C Environmental* augured for a different result. However, the factual scenario that led to that different result in *A&C Environmental* is not present here.

For similar reasons, the Seventh Circuit decision in *Szmaj* does not advance Cingular's argument. In that case, the defendant moved for judgment as a matter of law at the end of plaintiff's case in chief. The district judge in that case did not rule on the motion, but kept it under advisement until after the jury had returned a verdict. 291 F.3d at 957. The Seventh Circuit explained that if a "motion for judgment as a matter of law is made at the close of the plaintiff's case and denied and not renewed at the close of the defendant's case, the plaintiff may assume that the denial was the end of the matter, . . . ." *Id.* at 958. On the other hand, the Seventh Circuit noted that "if the defendant shows by renewing the motion that the denial was not the end of the matter, the plaintiff may ask and may receive permission from the judge to put in some additional evidence to show that there is a jury issue," thereby explaining the rationale for requiring that the motion be renewed prior to the case being submitted to the jury. *Id.* The Seventh Circuit explained that "[t]his rationale collapses when, *as in this case but not in our previous cases*, the judge takes the original motion under advisement;

5

for then the plaintiff knows at the end of the trial that the question of whether the defendant is entitled to judgment as a matter of law is a live one." *Id.* (emphasis added).

Again, as it did in *A&C Environmental*, the Seventh Circuit in *Szmaj* did not abandon its "previous cases" that strictly apply the requirement that a motion for judgment as a matter of law be renewed at the close of all the evidence. Instead, the appeals court found that those cases did not apply where the motion for judgment as a matter of law filed at the close of the plaintiff's case remained under advisement at the time the case was submitted to the jury. That factual scenario does not aid Cingular here, because the Court expressly denied the motions for judgment as a matter of law on the fraud claim (Tr. 547) and on the tortious interference claim (Tr. 554).

As for Cingular's argument concerning prejudice, we note that this argument fails at the threshold because the requirement that a motion for judgment as a matter of law that is denied at the close of the plaintiff's case must be renewed before the case is submitted to the jury applies, "even if there was no prejudice to the opposing party from failing to renew." *Szmaj*, 291 F.3d at 957 (citing *Downes*, 41 F.3d at 1139-40). Even were it otherwise, we disagree with Cingular's argument that everything raised in its post-trial Rule 50(b) motion was raised in the motion for judgment as a matter of law filed at the close of plaintiff's case. In its post-trial motion seeking judgment as a matter of law on the fraud claim, Cingular assumes (Cingular Mem. at 4 n.4), as it did in the motion for judgment as a matter of law at the close of Kempner Mobile's case (Tr. 542), that there was a false statement made about service pricing. However, Cingular argues that there was no false statement made with respect to equipment pricing (Cingular Mem. at 10-11), which is directly contrary to the position it took in the motion for judgment as a matter of law at the close of Kempner Mobile's case. At that time, Cingular stated that for the purposes of that motion, the Court "can

6

assume that there was a misstatement regarding the equipment pricing" (Tr. 545). And, with respect to the tortious interference claim, Cingular raises an argument concerning contact with corporate account customers that was not presented in its motion for judgment as a matter of law at the close of Kempner Mobile's case (compare Cingular Mem. at 15-16 and Tr. 551-53).[3]

## II.

"The failure to seek a judgment as a matter of law at the close of evidence does not procedurally bar a motion for a new trial, as it does for a renewed motion for judgment as a matter of law." WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d Section 2531 at 59 (1998 Supp.). Accordingly, we turn to Cingular's alternative motion for a new trial. Cingular seeks a new trial on all verdicts in Kempner Mobile's favor on the ground that the Court committed two legal errors that tainted the trial, and thus the verdicts resulting from it (Cingular Motion, at 7 ¶ 2; Cingular Mem. at 22-25). In addition, Cingular specifically challenges four of the verdicts on the ground that they are contrary to the weight of the evidence: the verdicts on Kempner Mobile's claims for fraud, tortious interference, and breach of contract resulting from the failure to pay commissions, and on Cingular's contract counterclaim based on Kempner Mobile's failure to pay for equipment delivered by Cingular.[4] Because the legal standards differ somewhat between Rule

---

[3]During oral argument, Cingular sought to withdraw its post-trial contention that there was insufficient evidence of a false statement on equipment pricing. Nonetheless, the fact that Cingular made this contention at all shows the wisdom of requiring the Rule 50(a) motion to be renewed at the end of the evidence, to eliminate any possibility that a party will be lulled into forgoing the chance to offer additional evidence on a point that is raised only after trial.

[4]In its post-trial motion, Cingular asserts – in one unelaborated sentence – that the jury's verdict against Cingular on its counterclaim alleging that Kempner Mobile breached the noncompete agreement was "not supported by the evidence" (Cingular Mot., at 8 ¶ 24). However, Cingular does not elaborate on that argument in its memoranda of law, and fails to provide citations either to authority or to the record to support that assertion. Moreover, during oral argument Cingular did not assert that this verdict was unsupported by the evidence. We treat any claim by Cingular attacking the sufficiency of the evidence for this verdict to be waived.

59(a) motions based on alleged legal errors and those based on sufficiency of the evidence, we address those arguments separately.

## A.

We begin with the attacks by Cingular on all the verdicts based on alleged legal errors. When considering a claim that a new trial is warranted due to legal errors, we begin with the proposition that "[c]ivil litigants are entitled to a fair trial, not a perfect one . . . [A] new trial will not be ordered unless there was an error that caused some prejudice to the substantial rights of the parties." *Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1994) (quoting *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993); *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 939 (7th Cir. 2001) (a party seeking a new trial based on alleged legal errors "bears a heavy burden"). A party first must show an abuse of discretion in the Court's rulings, which alone is a steep hill to climb. *See Rodriguez v. Anderson*, 973 F.2d 550, 552-53 n.3 (7th Cir. 1992). In addition, a party seeking a new trial must show not only that errors were committed, but that they were "substantial enough to deny him a fair trial." *Wilson*, 25 F.3d at 584; *see also Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1048 (7th Cir. 2000) (evidentiary errors warrant a new trial "only if a significant chance exists that they affected the outcome of the trial"). A trial judge's denial of a motion for new trial will not be reversed "unless a clear abuse of discretion is shown." *Wilson*, 25 F.3d at 584; *see also Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000); *Hasham*, 200 F.3d at 1052; *Rodriguez*, 973 F.2d at 552).

Cingular's motion challenges two rulings: (1) the Court's decision to allow testimony by other agents of Cingular on certain subjects, and (2) the Court's decision, on the morning that trial

was to commence, to bifurcate the proceedings and to proceed only on liability issues. We find no legal error in either of those rulings.

*First*, Cingular's argument about agent testimony in large measure reprises a motion *in limine* that it filed seeking to exclude testimony by other agents. The Court denied that motion (*see* doc. # 99), and for the reasons stated by the Court on the record in denying the motion, continues to hold that the evidence offered through other agents was relevant and admissible. Cingular continues to maintain that this evidence showed at most that Cingular made "mistakes" in calculating and paying commissions (Cingular Mem. at 23). In so doing, Cingular continues to ignores that a jury could infer from this evidence that the recurring commission disputes reflected not innocent mistakes but, instead, a purposeful intent to underpay. Contrary to Cingular's argument, such an inference could more than "marginally advance []" Kempner Mobile's contract claim for unpaid commissions (Cingular Mem. at 23).[5]

*Second*, Cingular argues that the Court erred by deciding *sua sponte*, on the morning of trial, to bifurcate the proceeding and to try the liability issues first (Cingular Mem. 24-25; Cingular Reply Mem. at 15 n.13). "The separation of issues of liability from those relating to damages is an obvious use for Rule 42(b)." WRIGHT AND MILLER FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2390 at 502 (1995 ed.). Cingular does not argue that this was the kind of case where liability could not

---

[5]Cingular also argues that, even if there was no error in the Court's ruling allowing agents to testify to certain matters, the testimony admitted exceeded the boundaries set by the Court in its order on the motion *in limine* (Cingular Mem. at 24; Cingular Reply Mem. at 14-15). The Court has reviewed the citations to the record offered by Cingular to support this argument, and notes that Cingular posed no contemporaneous objections either to the questions or the responsive testimony. Cingular's argument has therefore been waived. Moreover, even if admission of that testimony was error (which we find it was not), there was no prejudice resulting in that testimony by one witness "substantial enough to deny [Cingular] a fair trial." *Wilson*, 25 F.3d at 584.

be tried separately from damages, but rather contends that the timing of the bifurcation decision caused Cingular to suffer prejudice. We find this argument unpersuasive for two reasons.

To begin with, Cingular has made no showing of prejudice. Cingular complains that the bifurcation decision permitted Kempner Mobile to present "vague and insufficient evidence on the new fraud theory that could not be fully vetted" (Cingular Mem. at 25). However, we disagree with the underlying premise of this argument – which is that Kempner Mobile shifted its fraud theory from reliance on a false statement regarding equipment pricing during the summary judgment phase, to reliance on a false statement concerning service pricing at trial. As the Court's summary judgment opinion discloses, Kempner Mobile alleged misrepresentations with respect to both equipment and service pricing. *See Kempner Mobile Electronics, Inc.*, 2003 WL 22595263, at \*4. Moreover, Cingular has failed to explain how Cingular would have been better able to "fully vet" Kempner Mobile's fraud claim at a unitary trial of liability and damage issues than it was in the separate liability trial. Cingular also argues that it was prejudiced because the evidence "was confused on the issue of Cingular's equipment receivable" (Cingular Mem. at 24), without explaining how the bifurcation of the trial contributed to that alleged confusion. We find no error in the bifurcation, and no prejudice to Cingular resulting from it.

*Second*, even were it otherwise, Cingular waived the argument by agreeing to the bifurcation. On the morning of trial, Cingular presented an emergency motion attacking the damages theories and evidence offered by Kempner Mobile through its retained expert.[6] After hearing argument on that motion for nearly one hour (Tr. 8-34), the Court concluded that it would be unwise to proceed with

---

[6]The Court sees no need to weigh in on the dispute between the parties as to where fault should lie for this eleventh-hour complication that arose.

a trial on damages given this last-minute issue about the admissibility of the damages evidence. It was at that time that the Court offered the parties the option of proceeding to trial solely on the question of liability (Tr. 33). Once Kempner Mobile indicated its willingness to proceed in a bifurcated proceeding (Tr. 34), Cingular also agreed to do so (Tr. 35). The Court specifically asked whether there was any objection to proceeding with the bifurcated trial, with the liability and (if necessary) damages issue to be decided by separate juries. Each side expressly stated that it had no objection (Tr. 35). With those agreements, the Court then exercised its discretion to bifurcate the trial (Tr. 35). Quite apart from Cingular waiving any argument about bifurcation by its consent to the procedure, we are hard pressed to find any abuse of discretion in the Court's decision to pursue a course to which both sides agreed. *See Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) ("The district court has considerable discretion to order the bifurcation of a trial, and we will overturn the decision only upon 'a clear showing of abuse'").

### B.

We now turn to Cingular's argument that four of the verdicts are contrary to the manifest weight of the evidence. When assessing the sufficiency of the evidence, the Court considers whether any rational jury could find for the plaintiff. If there is any reasonable basis in the record to support the verdict, then it cannot be overturned in favor of a new trial. *Cefalu*, 211 F.3d at 424. While this standard is not as exacting as the standard for granting judgment as a matter of law, courts should not lightly grant new trials:

> On the one hand, the trial judge does not sit to approve miscarriages of justice. . . . On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter.

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2806, at 74-75 (1995 Ed.). *See also Terrell v. Wal-Mart Stores, Inc.*, No. 96 C 7464, 2000 WL 310379, at *3 (N.D. Ill. Mar. 24, 2000) ("The Seventh Circuit has made clear that a verdict of a jury cannot be set aside simply because the trial judge, sitting as the trier of fact, would have reached a different result").

Mindful of these principles, the Seventh Circuit has held that "new trials granted because the verdict is against the weight of evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995). With that standard in mind, we consider Cingular's challenges to the sufficiency of the evidence for the jury's verdicts on (1) Kempner Mobile's fraud claim, (2) Kempner Mobile's tortious interference claim, (3) Kempner Mobile's contract claim for payment of commissions, and (4) Cingular's contract claim for equipment receivables.[7]

### 1.

In its fraud claim, Kempner Mobile asserted that in May 2001, Cingular represented that Kempner Mobile (an outside agent of Cingular) would receive the same equipment and service pricing as was available to Cingular's internal distribution channels. Kempner Mobile asserts that

---

[7]In its reply memorandum, Cingular argues that the Court may assess witness credibility in considering the sufficiency of the evidence (Cingular Reply Mem. at 1-2). There is a line of Seventh Circuit authority, which predates *Latino*, that supports this view. *See Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985) ("the judge may consider the credibility of the witnesses, the weight of the evidence, and anything else which justice requires"); *Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158, 1163 (7th Cir. 1987) ("the district judge might conclude that the verdict was not reliable enough to justify terminating litigation without the additional confidence that a second verdict, rendered by a different jury, might impart if it agreed with the first verdict," noting that such a discretionary determination "involves the consideration of the witnesses' credibility"). We believe that *Latino* strikes a proper balance between a trial judge's authority to grant a new trial based on sufficiency of the evidence and the province of the jury to find the facts in a case. Moreover, Cingular has never identified any evidence that it contends the Court should find lacking in credibility. Perhaps for these reasons, during oral argument Cingular retreated from the assertion in its brief, and made plain that it does not ask the Court to assess witness credibility in deciding the Rule 59(a) motion.

these representations were false, and that in justifiable reliance on the representations, Kempner Mobile decided not to terminate its relationship with Cingular and to accept an attractive offer to become a master agent for Nextel. Kempner Mobile asserted that by the time it fully recognized the falsity of Cingular's representations, the offer with Nextel was no longer available.

Cingular argues that the evidence at trial was insufficient to establish two elements of Kempner Mobile's fraud claim: the elements of justifiable reliance and injury. We disagree.[8]

The principal evidence with respect to both reliance and injury came from the testimony of Kempner Mobile's president, Scott Kempner. Mr. Kempner testified that he had suspicions about Cingular's pricing prior to his conversation with the Cingular representative, Lauren Whiddon, in May 2001, but that Mr. Whiddon's statements provided him with assurance (see Tr. 296). Mr. Kempner testified that as of late 2001, he began to doubt the representations but was not sure about their falsity until March 2002, when he located documentary evidence by rummaging through the trash at a Cingular location (Tr. 203-04). Mr. Kempner testified that by the time he learned the truth in May 2002, the Nextel opportunity that he could have taken in May 2001 no longer was available (Tr. 208).

There was some, but not extensive, corroborating evidence for this testimony. The plaintiff presented a stipulation to the jury that Greg Mistak, a dealer manager for Nextel between 1997 and 2001, offered Kempner Mobile the opportunity to become a master dealer for Nextel in 1997, and

---

[8]In its opening memorandum, Cingular abandoned any argument that the evidence was insufficient to support a finding that there was a false statement concerning service pricing (Cingular Mem. at 4 n.4). Cingular's written submissions did contend that there was insufficient evidence to support a finding that there was a false statement concerning equipment pricing (Cingular Mem. at 10-11; Cingular Reply Mem. at 9). In light of Cingular's concession that there was sufficient evidence to support a finding of a false statement concerning service pricing, any quarrel that Cingular raised concerning the evidence as it pertained to equipment pricing seems beside the point. In any event, during oral argument, Cingular specifically withdrew its contention that the evidence was insufficient to support a finding that there was a false statement concerning equipment pricing.

that offer remained available after 1997 (Tr. 536-37). Plaintiff also presented a stipulation to the jury that if Kempner Mobile had terminated the agreement with Cingular in May 2001, then Kempner Mobile "would have been free to pursue the Nextel opportunity without restriction" (Tr. 842).[9] There also was evidence that in May 2002 Kempner Mobile entered into an agreement with Nextel, with the terms being less favorable than those that Mr. Kempner described as available from Nextel in May 2001.

Cingular argues that the evidence was insufficient to show justifiable reliance because, prior to May 2001, Kempner Mobile suspected that it was not getting "equal pricing" from Cingular (Cingular Reply Mem. 6-7). While a party may not claim justifiable reliance when he "close[s] his eyes to obvious facts," a person does not have to assume that someone making representations "is a liar," or to "dig beneath apparently adequate assurances." *Dougherty v. Zimbler*, 922 F. Supp. 110, 115 (N.D. Ill. 1996). Here, the jury was presented with the evidence about the evolution of the relationship between Kempner Mobile and Cingular, and was in a position to assess whether Kempner Mobile, in light of the knowledge it possessed as of May 2001, reasonably could accept the statements it says that Cingular made assuring Kempner Mobile that it could receive the same equipment and service pricing as Cingular's internal distribution channels. We cannot say that the jury's finding, implicit in its verdict, that Kempner Mobile reasonably relied on Cingular's statements in May 2001 was without sufficient evidentiary support.

---

[9]The stipulation also contained the proviso that Kempner Mobile could have done so if it had been entitled to terminate the Cingular agreement (Tr. 842). However, Cingular did not offer any argument that Kempner Mobile would have been unable to terminate the agreement and avail himself of the Nextel opportunity in May 2001 had he wished to do so.

As to injury, Cingular's central argument is that Kempner Mobile offered insufficient evidence to show that the Nextel master dealer opportunity was not available by the time that Kempner Mobile discovered the alleged false statement (*see, e.g.,* Cingular Reply Mem. at 7-8). Cingular concedes that Mr. Kempner testified that was so (Tr. 208), but claims that his testimony alone is not enough without corroborating evidence (Cingular Reply Mem. at 8). We disagree. As the jury was instructed, without objection from Cingular, "[t]he law does not require any party to call as witnesses all persons who may . . . have some knowledge of the matters in issue at this trial, nor does the law require any party to produce as exhibits all papers and things mentioned in evidence in the case . . . the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact . . . ." the testimony of a single witness which produces in your mind belief [in] the likelihood of truth is sufficient for the proof of any fact and would justify a verdict in accordance with such testimony, . . . (Tr. 851-52). Cingular cannot complain that the jury followed this instruction, as it is presumed to have done. *United States v. Colvin*, 353 F.3d 569, 577 (7th Cir. 2003); *Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996).

Moreover, in fact, there was some corroboration for Mr. Kempner's testimony. The stipulation read to the jury at the end of the plaintiff's case in chief indicated that the Nextel master dealer opportunity had been offered to Kempner Mobile by Mr. Mistak, who was a dealer manager for Nextel between 1997 and 2001 (Tr. 536-37). The fact that Mr. Mistak no longer was employed at Nextel after 2001 is consistent with Mr. Kempner's testimony that the Nextel opportunity was not available to him in March 2002, when he found documentary evidence that he believed proved the

falsity of Cingular's May 2001 statements.[10] And, there is evidence that the Nextel contract that Kempner Mobile signed in May 2002 was less desirable than the one that was described as available to him through Mr. Mistak in May 2001. That evidence provides some corroboration for Mr. Kempner's testimony that the Nextel master dealer arrangement was not available to him as of the spring 2002, as it would be reasonable for a jury to infer that Kempner Mobile would have signed a more desirable Nextel agency contract had one been available.

Cingular criticizes Kempner Mobile for not offering more corroborating evidence in the form of documents or testimony from Nextel concerning the master dealer agreement available in May 2001. To be sure, Kempner Mobile pursued a risky course in offering the limited evidence that it choose to present on that subject. But, Cingular also chose a risky course by failing to contradict Kempner Mobile's evidence by itself offering testimony or documents from Nextel (if in fact the testimony or documents would have supported Cingular's position). Cingular was not required to present this evidence, as it was Kempner Mobile that had the burden of proof. However, having elected not to offer testimony or exhibits contradicting Kempner Mobile's evidence on this point, Cingular cannot complain about the jury's decision to credit Kempner Mobile's evidence.

Finally, Kempner Mobile argues that there was insufficient evidence of injury, reasoning that the Nextel opportunity that Kempner Mobile elected not to pursue in May 2001 must not have been a lucrative one since, when Kempner Mobile started selling for Nextel in May 2002, he did not fare

---

[10]Cingular contends that Kempner Mobile should have known of any false statement by December 2001 (Cingular Mem. 4-5), thereby suggesting that the opportunity to become a master dealer for Nextel was still available at the time that Kempner should have known of the false statement. But, the timing of when Kempner Mobile knew – rather than suspected – that there had been a false statement was a fact question for the jury. In light of the testimony that Mr. Kempner was not convinced that there had been false statements until he found documentary evidence in March 2002, we are unpersuaded that there was insufficient evidence to support a jury conclusion that Kempner Mobile's knowledge of the false statements did not occur until that later date.

better than he had as an agent for Cingular (Cingular Mem. at 17). Cingular's argument assumes that the opportunities available from Nextel were the same in May 2002 as they were in May 2001; but, as we have found above, there was sufficient evidence for the jury to conclude otherwise. In addition, this argument confuses whether Kempner Mobile suffered injury in the form of a lost opportunity with Nextel, and what damages Kempner Mobile can establish from that lost opportunity. The latter question will be addressed at the damages phase of this proceeding, and is not a basis to find that there was insufficient evidence to support the jury verdict as to liability.[11]

**2.**

We now turn to the tortious interference claim. Kempner Mobile argued that it had an expectation of a continuing economically advantageous relationship (in the form of a residual commission stream) with those subscribers who had been brought to Cingular by Kempner Mobile. Kempner Mobile argued that Cingular intentionally and without justification interfered with that expectancy by contacting those subscribers for the purpose of "switching" them from Kempner Mobile to Cingular's internal channels of distribution. Kempner Mobile argued that it sustained injury as a result of that activity, in the form of lost residual commissions.

Although Cingular makes a number of arguments to attack the sufficiency of the evidence, we are persuaded here that a new trial is warranted because of the paucity of evidence on the question of injury. Contrary to Cingular's arguments, Kempner Mobile offered sufficient evidence to allow a jury reasonably to conclude that Cingular undertook affirmative efforts to switch customers from Kempner Mobile to Cingular's internal distribution channels, and did not merely

---

[11]Having denied Cingular's motion for a new trial on the fraud claim, it is plain that even had Cingular not waived its Rule 50(b) motion on that claim, the motion would have failed on the merits.

react to those customers who sought out Cingular rather than going to Kempner Mobile.[12] However, Kempner Mobile failed to offer substantial evidence that Cingular's contacts with its subscribers resulted in the subscribers being removed from Kempner Mobile's residual commission stream. Kempner Mobile called as witnesses a number of subscribers whom Cingular had contacted, allegedly for the purpose of switching them from Kempner Mobile's residual list to Cingular's internal channels. However, with one exception, those subscribers in fact were not removed from Kempner Mobile's residual list; and, in the one exception, Cingular offered to keep that subscriber on Kempner Mobile's residual list if she returned a phone that Cingular had provided to her as part of the arrangement, but she declined to do so.

Kempner Mobile argues that the jury was entitled to infer that these particular subscribers were not switched only because Cingular got "caught in the act," and that the jury was entitled to infer that other subscribers were removed from Kempner Mobile's residual list in situations that Kempner Mobile did not catch (Kempner Mobile Mem. at 10). That might be true if improper contact by Cingular was the only reason that a subscriber would be removed from Kempner Mobile's subscriber lists. But that is not the case: Kempner Mobile concedes that subscribers may be removed from a residual list for good and valid reasons. We find there is insufficient evidence on this record to have allowed a jury to determine that particular subscribers who were removed from

---

[12]For this reason, we find unpersuasive Cingular's argument that the evidence was insufficient to show that any contact by Cingular with the subscribers was "without justification." At the same time, we are unpersuaded by Kempner Mobile's argument that Cingular waived this point by failing to seek a specific jury instruction on this point (Kempner Mobile Mem. at 9). The jury instruction on the tortious interference claims specifically stated that Kempner Mobile had the burden of proving that Cingular's interference with Kempner Mobile's relationship with its subscribers was "without justification" (Tr. 863).

Kempner Mobile's residual list were removed for improper, as opposed to proper, reasons. Accordingly, we grant Cingular's motion for a new trial on the tortious interference claim.[13]

### 3.

Kempner Mobile asserted a claim that Cingular had breached its agreement with Kempner Mobile by failing to pay all commissions and residuals that were due to Kempner Mobile. There was substantial testimony concerning the vagaries of Cingular's commission accounting system, and difficulties that Kempner Mobile – as well as other agents – had in receiving the payments that they claimed were due. Kempner Mobile offered evidence that there were specific contracts for which commissions were not paid (PX 133, 139, 142, 144, 146, 149 and 150). Cingular offered no evidence to show that commissions on these particular contracts had been paid in full. We find that the evidence was sufficient to support a jury verdict for breach of contract as to commissions due on these particular contracts.

However, we wish to emphasize the limited scope of this liability verdict. The jury verdict establishes liability only as to the foregoing specific contracts that were offered into evidence. Kempner Mobile did not offer evidence as to other specific contracts for which payment was not made, and at a damages proceeding Kempner Mobile will not be allowed to expand on the liability finding by seeking to recover damages on other contracts that were not part of that finding.[14]

------------------------------

[13]In making this determination, we note that the evidence on the tortious interference claim is not so sparse that it would convince the Court to grant Cingular's judgment as a matter of law, had Cingular not waived the Rule 50(b) motion.

[14]During oral argument, Kempner Mobile contended that it should be able to prove commissions for other contracts on a theory of accounting. Kempner Mobile requested an accounting on the commission contract claim in its amended complaint (see Am. Compl. ¶ 54). However, to establish a claim for accounting, a plaintiff must prove the absence of an adequate remedy at law. *3 Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000); *Midwest Moped Assocs., Inc. v. Allmed Financial Corp.*, No. 98 C 6973, 1999 WL 674747, at *1 (N.D. Ill. Aug. 23, 1999). Any claim of inadequacy here "would fly in the face of the breach of contract claim." *Allmed*, 1999 WL 674747, at *2. As in *Allmed*, this case presented "a run-of-the-mill breach of contract claim with complicated

**4.**

Finally, Cingular seeks a new trial on its counterclaim alleging that Kempner Mobile failed to pay amounts due for equipment that Kempner Mobile purchased from Cingular. At trial, Cingular offered evidence that the equipment was shipped to Kempner Mobile, that Kempner Mobile kept and used the equipment, but that Kempner Mobile did not pay for it in full. Kempner Mobile offered no evidence to contradict these points, but did offer an affirmative defense that Cingular had waived its claim.

The jury was instructed that in order to establish this counterclaim, Cingular would have to prove, among other things, that it "substantially performed all obligations required of it under the *agreement*" (Tr. 865) (emphasis added). During closing argument, Kempner Mobile seized on this point. Kempner Mobile argued that Cingular had to prove that it "substantially performed the contract," and argued that Cingular should not be able to collect on the equipment receivable counterclaim because Cingular had breached the contract by failing to properly pay Kempner Mobile commissions and residuals (Tr. 897-98).

Cingular argues that the jury verdict in favor of Kempner Mobile on this counterclaim should be reversed because the jury was confused by the instruction that conflated two separate agreements: (a) Kempner Mobile's agency agreement with Cingular, which governed the obligation to pay commissions and residuals, and (b) a separate agreement between Kempner Mobile and Cingular

---

damages calculations." *Id.* Further undermining any claim that Kempner Mobile is entitled to an accounting is that prior to trial, Kempner Mobile submitted a chart that purported to identify fully its contract damages. *See* Def.'s Emergency Motion; 11/17/03, at Ex. A. We therefore dismiss any request for an accounting by Kempner Mobile on the commission contract claim.

for the sale of equipment, which Kempner Mobile was allowed – but not required – to buy from Cingular (Cingular Reply Mem. 14). We are persuaded by this argument.

Cingular originally tendered an instruction on the counterclaim that specifically referred to the separate contract for the equipment purchases. In reviewing the draft instructions tendered by the parties, the Court recast the instruction to refer to one agreement. During the colloquy concerning the redrafted instruction, Cingular's counsel pointed out that there were separate agreements, "one for the equipment that was shipped and one for just the agency agreement, because the agency agreement doesn't itself provide the terms for the equipment purchase" (Tr. 699). Cingular posed no objection to the recast instruction, once Kempner Mobile's counsel agreed that he would not argue that the agency agreement did not require Kempner Mobile to pay for the equipment (Tr. 699-700).

Kempner Mobile's argument during closing did not violate that representation. However, on reflection, we believe that the shortened instruction created an unforeseen area of confusion for the jury. The shortened instruction allowed the jury to find against Cingular on the equipment receivable counterclaim in the event that it found that Cingular had failed to substantially perform all of its obligations under the separate agency agreement. That was not a subject that the parties ever briefed, and that was not an outcome that the Court intended. And, Kempner Mobile would have difficulty in disputing that this outcome well might have occurred: the jury is presumed to have followed the instruction, and Kempner Mobile used it as a basis for arguing that the jury should not return a verdict for Kempner Mobile on the equipment receivable counterclaim. As a result, the Court will give Cingular a new trial on its equipment receivable counterclaim.

21

## CONCLUSION

For the foregoing reasons, the Court DENIES Cingular's Rule 50(b) motion for judgment as a matter of law on Kempner Mobile's fraud and tortious interference claims; GRANTS Cingular's Rule 59(a) motion for a new trial on Kempner Mobile's tortious interference claim and on Cingular's equipment receivable counterclaim; and in all other respects DENIES Cingular's Rule 59(a) motion for a new trial. As a result of these rulings, there will be a new trial on liability with respect to Kempner Mobile's tortious interference claim and Cingular's equipment receivable counterclaim. There also will be the need for a trial to determine damages with respect to Kempner Mobile's fraud and contract claims (and, potentially, Kempner Mobile's tortious interference claim and Cingular's equipment receivable counterclaim). The case is set for a status conference on March 30, 2004, at 9:00 a.m. At that time, the parties are to present to the Court their proposal(s) for the procedures and schedules to use in resolving the remaining liability and damages claims.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: March 3, 2004**