# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5403 | **DATE** | 11/15/2004 |
| **CASE TITLE** | Kempner Mobile vs. Southwestern Bell Mobile | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the attached Memorandum Opinion and Order, the Court finds that Kempner cannot claim fees under Paragraph 35(b); and both parties are limited to the fee shifting provided in Paragraph 24 on the claims arising under the agreement which they each prevailed. The Court reserves ruling on what recovery Kempner may have, if any, on the agreement claims on which it obtained judgment (Counts V and VI of the complaint and Count I of the counterclaim), and what recovery Cingular may have, if any, in the agreement claims on which it obtained judgment (Counts III and IV of the complaint). A status is set for 11/30/04 at 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 16 2004 date docketed | |
| | Docketing to mail notices. | | | 191 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mm | courtroom deputy's initials | 2004 NOV 15 PM 3:04 U.S. DISTRICT COURT FILED | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| KEMPNER MOBILE ELECTRONICS, INC., ) ) ) Plaintiff, ) ) vs. ) ) SOUTHWESTERN BELL MOBILE SYS., ) LLC, d/b/a CINGULAR WIRELESS, ) ) Defendant. ) | No. 02 C 5403<br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER

This hard-fought litigation has spawned a preliminary injunction hearing, two trials, three extensive memorandum opinions,[1] and cross-appeals from the final judgments entered in the case. These opinions lay out the details of the parties' underlying disputes and the claims they have raised; we will repeat those details here only insofar as necessary to understanding and resolving the current dispute that once again brings the matter before the Court.

Kempner Mobile Electronics, Inc. ("Kempner") and Southwestern Bell Mobile Systems, LLC, d/b/a Cingular Wireless ("Cingular"), have jointly filed a request for the Court to interpret the attorneys' fee provisions contained in the parties' Agency Agreement ("Agreement") for purposes of helping them resolve their post-trial fee disputes. The Court granted that request on October 1, 2004; the parties briefed the issues; and the Court held oral argument on the matter on October 27,

---

[1] *See Kempner Mobile Electronics Inc. v. Southwestern Bell Mobile Sys. LLC*, 02 C 5403, 2003 WL 1057929 (N.D. Ill. March 10, 2003) (preliminary injunction ruling); *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Sys., LLC*, 02 C 5403, 2003 WL 22595263 (N.D. Ill. November 7, 2003) (summary judgment ruling); *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Sys., LLC*, 02 C 5403, 2004 WL 434213 (N.D. Ill. March 4, 2004) (ruling on post-trial motions).

2004. After reviewing the relevant contractual provisions and the parties' arguments concerning the interpretation of them, the Court finds as follows.

## I.

By its express terms, the Agreement at issue is governed by Illinois law (Kempner's Mem. Ex. A, ¶ 24), a point which the parties do not dispute. Therefore, the contract interpretation issues that the parties raise require the Court to apply the following well-established principles of Illinois law.

The interpretation of a contract is a question of law. A court cannot give the contract a construction that would render any phrase or term superfluous or meaningless; we must give it some reasonable meaning. *Gray v. Nat'l Restoration Systems, Inc.*, ___ N.E. 2d ___, No. 1-01-4062, 2004 WL 834724, * 20 (Ill. App. 1st Dist. Apr. 16, 2004). "[C]ontractual provisions for attorney fees must be strictly construed and the court must determine the intention of the parties with respect to the payment of fees." *Grossinger Motorcorp. Inc. v. American National Bank & Trust Co.*, 607 N.E.2d 1337, 1348 (Ill. App. 1st Dist. 1993) (citing *Helland v. Helland*, 573 N.E.2d 357 (Ill. App. 2d Dist. 1991)).

## II.

We begin our analysis with a recitation of the contractual fee provisions at issue, which are set forth at paragraphs 24 and 35 of the Agreement. Paragraph 24 provides in relevant part:

24. <u>GOVERNING LAW</u>

\* \* \*

If any suit or action shall be brought to enforce or declare any of the terms of this Agreement, to terminate this Agreement or to recover any damages sustained as a result of a default in the performance of any obligations under this Agreement, or a

breach of any of the representations and warranties herein contained or otherwise pursuant to this Agreement, *then except as otherwise provided in Paragraph 35,* the party not prevailing in such suit or action shall be liable to the prevailing party for the prevailing party's costs and expenses, including, without limitation, court costs and reasonable attorneys' and expert witnesses' fees (including, without limitation, the value of time spent by in-house personnel), the amount of which shall be fixed by the court and shall be made a part of any judgment rendered. The parties agree that any such suit or action must be brought, if at all, within one (1) year after the underlying cause of action accrues.

(Kempner's Mem. Ex. A, ¶ 24) (emphasis added). Paragraph 35 provides in relevant part:

35. DISPUTE RESOLUTION AND MEDIATION

For all disputes relating to this Agreement except those relating to Paragraph 20, Covenants Not to Compete, prior to instituting litigation in connection with this Agreement in any forum, including but not limited to, state, federal, or regulatory proceedings, each party agrees to the following procedures:

(a) The aggrieved party shall give detailed written notice to the other party of its specific complaint, including the amount of actual damages and expenses, including attorney's fees, claimed by the aggrieved party. The aggrieved party shall include copies of all documents that support its claims. Within thirty (30) days after receipt of the notice, the party receiving the notice shall tender to the aggrieved party a written offer of settlement. Any offer of settlement not accepted within thirty (30) days of receipt by the aggrieved party shall be deemed to have been rejected.

(b) In the event of litigation, a settlement offer made pursuant to Paragraph 35(a) above, if rejected by the aggrieved party, may be filed with the court together with an affidavit certifying its rejection. If the court finds that the amount tendered in the settlement offer is greater than or equal to the actual damages found by the trier of fact, the aggrieved party shall incur the costs of its own attorney's fees and shall reimburse the other party for its reasonable attorney's fees incurred. If recovery is more [than] the amount tendered in the settlement offer, then the accused party will reimburse the aggrieved party for its reasonable attorneys' fees.

(d) If the parties are unable to settle their disputes through the above procedure, the parties agree to submit their dispute to mediation as described in this paragraph within 90 days after rejection of the settlement offer. Compliance with these procedures on dispute resolution and mediation shall be a

3

> condition precedent to instituting any judicial, quasi-judicial and/or regulatory proceeding.
>
> .....

(*Id.*, at ¶ 35).

There is no dispute that Paragraph 24 provides for fees to be awarded to prevailing parties on claims that arise directly under the Agreement: for example, claims for breach of the Agreement. However, Paragraph 35 uses a different measuring stick for deciding when to shift attorneys' fees. It is not enough that a party prevail. Rather, a party must obtain a recovery that exceeds what was offered in settlement under Paragraph 35(a); if a party obtains a recovery that is less than or equal to what was offered in settlement under Paragraph 35(a), then the party who "prevailed" on the judgment nonetheless must pay the "losing" side's fees.[2]

These differences in Paragraphs 24 and 35 raise a threshold question: when does each respective fee-shifting provision apply? By their terms, each provision covers certain types of claims that are not within the scope of the other. Paragraph 35 does not cover disputes involving Paragraph 20 of the Agreement, which sets forth various covenants not to compete, whereas Paragraph 24 extends to any suit to enforce, declare or recover damages for a default or breach of *any* obligation under the Agreement – which includes obligations under Paragraph 20. On the other hand, Paragraph 24 does not extend to tort claims (as the parties agree), whereas Paragraph 35 permits fee

---

[2]We also note that Paragraphs 24 and 35 define differently the "fees" that are shifted in (for example, Paragraph 24 shifts fees for in-house counsel and experts, while Paragraph 35 does not).

4

shifting for tort claims or statutory claims (if the requirements of Paragraph 35(a) and (b) are met) that are "disputes relating to this Agreement."[3]

But, what about breach of contract claims that might fall under either Paragraph 24 or 35? That is where the phrase in Paragraph 24, stating that a prevailing party shall recover fees "except as otherwise provided in Paragraph 35," comes into play. The fee shifting provision in Paragraph 35(b) is not mandatory: that is, a party who "may" invoke Paragraph 35(a), but it is not required to do so. That is the common-sense meaning we draw from the fact that Paragraph 35(b) uses the permissive word "may" rather than the mandatory word "shall" – in contrast to (1) Paragraph 35(a), which uses the word "shall" in describing the pre-suit notice and settlement offer that must be given as a precondition to recovery of fees under Paragraph 35(a), and (2) Paragraph 35(d), which uses the word "shall" in describing recourse to the mediation process that is a precondition to suit. As we read the Agreement, what that means is that a party who is entitled to invoke Paragraph 35(b), and who successfully does so, cannot then recover fees under Paragraph 24. This interpretation gives

---

[3]Cingular disputes this latter reading of Paragraph 35. However, case law from Illinois and the Seventh Circuit indicate that a phrase such as "all disputes relating to this Agreement" is very broad. In the arbitration context, Illinois courts have held that the parties are obligated to arbitrate any dispute that arguably arises under the agreement containing that broad, generic provision. *See Bass v. SMG, Inc.*, 328 Ill.App.3d 492, 498 (1st Dist. 2002); *Reed v. Doctor's Associates, Inc.*, 331 Ill.App.3d 618, 626 (5th Dist. 2002). Moreover, the Seventh Circuit has held that tort and fraud claims related to the contractual relation between the parties are covered by such a phrase. *See Kroll v. Doctor's Associates, Inc.*, 3 F.3d 1167, 1170 (7th Cir. 1993) ("[t]he touchstone of arbitrability in such situations is the relationship of the tort alleged to the subject matter of the arbitration clause."). *See also In re Oil Spill By the "Amoco Cadiz" Off the Coast of France v. Bugsier Reederei and Bergungs, A.G.*, 659 F.2d 789, 794 (7th Cir. 1981) (tort claims fall under clause stating "any dispute or difference arising out of or relating to this contract"); *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 338 (7th Cir. 1984) (claims of fraud fall under broadly worded phrase such as any controversy "arising out of or relating to the contract" especially where there is no express provision to exclude a particular claim from its coverage).

meaning to both Paragraphs 24 and 35, and to the caveat in Paragraph 24 that fees are awarded to a prevailing party "except as otherwise provided in Paragraph 35."[4]

### III.

With this basic interpretation of Paragraphs 24 and 35 in mind, we now address the parties' threshold dispute about their application here. In doing so, we begin by setting forth below, in table form, the outcome of the respective claims asserted by each side in the case:

<u>Kempner's Amended Complaint</u>

| | | |
|---|---|---|
| Count I | Declaratory Judgment Claim (contract-based) | Voluntarily Dismissed |
| Count II | Injunction Claim (contract-based) | Voluntarily Dismissed |
| Count III | Contract Claim | Summary Judgment for Cingular |
| Count IV | Contract Claim | Summary Judgment for Cingular |
| Count V | Contract Claim | Jury Verdict for Kempner – ($550.00 stipulated award) |
| Count VI | Contract Claim | Jury Verdict for Kempner – ($4,413.21 stipulated award) |
| Count VII | Common Law Fraud Claim | Jury Verdict for Kempner – ($1.00) |
| Count VIII | Statutory Fraud Claim | Summary Judgment for Cingular |
| Count IX | Franchise Act Claim | Summary Judgment for Cingular |
| Count X | Tortious Interference Claim | Jury Verdict for Kempner – ($21,125.00 stipulated award) |

---

[4]Cingular contends that Paragraph 35 is merely a "Rule 68-type of 'safe harbor'" for non-providing parties on claims covered by Paragraph 24, in cases where the procedures of Paragraph 35 have been invoked (Cingular's Mem. at 4). We agree that can be one use of Paragraph 35. But an interpretation that ascribes that as the only use of Paragraph 35 ignores that in addition to covering some of the same subject matter (most contract claims), Paragraph 24 and 35 each also cover independent subject matter that the other does not – breach of the covenant not to compete claim (covered by Paragraph 24 but not by Paragraph 35) and tort claims (covered by Paragraph 35 and not by Paragraph 24). For this reason, we also reject Cingular's assertion that interpreting Paragraph 35 to permit recovery of fees as an independent source of rights renders Paragraph 24 "mere surplusage" (Cingular's Mem. at 7).

6

Cingular's Counterclaim

| Count I | Contract Claim | Jury Verdict for Kempner |
| Count II | Contract Claim | Stipulated Judgment for Cingular ($94,235.38) |
| Count III | Abuse of Process Claim | Dismissed on Kempner's Motion |

The net result of the litigation was that Kempner was required to pay Cingular $68,146.17 (the difference between the $94,235.38 awarded to Cingular on the one contract counterclaim on which it prevailed, and the $26,089.21 awarded to Kempner on all claims on which it prevailed). Based on that net result, Kempner seeks recovery of fees under Paragraph 35(b), on the argument that that outcome of the litigation on the claims and counterclaims was more favorable – or, more accurately, less unfavorable – to Kempner than was Cingular's offer under Paragraph 35(a) to settle all claims and counterclaims for a net payment from Kempner to Cingular of $92,000.00 (a $130,000.00 demand by Cingular on its counterclaims, less a $38,000.00 payment – or credit – to Kempner on its claims). Cingular argues that Kempner is entitled to no recovery under Paragraph 35(b), and that the only fee recovery either side may obtain is under Paragraph 24 for those contract claims on which a party prevailed.

A.

To analyze Kempner's right, *vel non*, to invoke Paragraph 35(b), we begin with a brief recitation of relevant factual history. On July 31, 2002, Cingular removed Kempner's amended complaint from state court to this Court. That complaint contained declaratory and injunctive claims (Count I-II) that were not within the scope of Paragraph 35, but also included contract, tort and statutory claims that were. One week after removal, Kempner moved for a preliminary injunction (doc. # 2). That motion was followed the next day with a motion by Cingular to stay the case and

to compel mediation, on the ground that Kempner had jumped the gun by filing suit without complying with the mandatory, contractual pre-suit notice (Paragraph 35(a)) and mediation procedures (Paragraph 35(d)) in the Agreement (doc. # 3). On August 8, 2002, Cingular's motion was granted in part: Kempner was allowed to proceed with its request for a preliminary injunction with respect to the covenant not to compete (a category of dispute not subject to Paragraph 35), but all other aspects of the case were stayed pending, completion of the Paragraph 35 mediation process (doc. # 4).

The parties then went through the contractual mediation process. As the parties made clear at the oral argument, Kempner did not provide any notice – as the "aggrieved" party under Paragraph 35(a) regarding the claims in its complaint – other than by serving the complaint on Cingular. As its settlement offer, required under Paragraph 35(a), Cingular sent the following letter dated August 28, 2002:

> Dear Counsel:
>
> Pursuant to paragraph 35 of the Authorized Agency Agreement between the parties in the above-referenced matter, the following is Cingular Wireless's offer of settlement in response to the claims asserted in the Amended Complaint filed by Kempner Mobile Electronics, Inc.
>
> To compromise and resolve the claims between the parties, Cingular Wireless is willing to agree to the following terms.
>
> Kempner pays Cingular Wireless $92,000, representing the balance of approximately $130,000 for equipment purchases owed by Kempner to Cingular Wireless (of which more than $100,000 is past due), less approximately $38,000 Cingular Wireless will agree to credit Kempner for accrued commissions and residuals (notwithstanding that that amount has not been fully documented by Kempner).
>
> In addition, in exchange for this payment, as well as to avoid the expenses of litigation, Cingular Wireless will agree to waive half the term of Kempner's non-compete agreement. Accordingly, Kempner would agree to be bound not to compete with Cingular Wireless, as defined in paragraph 20 of the Agreement, for six months from July 21, 2002, the date of Kempner's termination.
>
> In consideration for this compromise, Cingular Wireless will also agree to forego its available counterclaims, drop its claim for preliminary injunction, agree to dismissal with prejudice of the

> pending action, and execute an appropriate settlement agreement and mutual release with Kempner, including a confidentiality provision.
>
> Please advise me, or my colleagues . . . , as soon as possible whether you accept this offer.

(Kempner's Mem., Ex. C).

Cingular's letter combined a valuation and offer on Kempner's claims asserted in the complaint ($38,000.00), with a notice of counterclaims that Cingular would file absent settlement and a demand that would settle those yet-to-be asserted counterclaims ($130,000.00). Kempner never responded to Cingular's letter. Thereafter, the mediation proceeded under Paragraph 35(d), without success.

### B.

There is no dispute that Kempner failed to comply with Paragraph 35(a) in two ways. *First*, Kempner failed to provide the Paragraph 35(a) notice prior to suit. *Second*, Kempner failed to include in the notice the information required by Paragraph 35(a) – such as, the amount of damages sought, including attorneys' fees, and copies of the documents that supported Kempner's claims. Cingular asserts that this non-compliance with Paragraph 35(a) bars Kempner from invoking Paragraph 35(b). Kempner concedes that its notice did not satisfy Paragraph 35(a), but argues that Cingular waived any non-compliance with Paragraph 35(a) by sending the August 28, 2002 letter and by participating in the Paragraph 35(d) mediation. We reject the waiver argument for the following reasons.

*First*, notice under Paragraph 35(a) is a prerequisite for both an award of fees under Paragraph 35(b) *and* the mediation process under Paragraph 35(d). By its August 8, 2002 order requiring the parties to mediate under Paragraph 35, the Court necessarily required that Cingular send the August 28, 2002 letter. Since Cingular asked for the mediation process under Paragraph

35(d) to take place, and did not demand a better Paragraph 35(a) notice from Kempner before doing so, Cingular fairly may be deemed to have waived strict compliance with Paragraph 35(a) as a precondition to mediation. But, neither Cingular's motion nor the Court's order requiring mediation addressed the parties' rights under Paragraph 35(b). Thus, Cingular's "waiver" of Kempner's failure to provide the notice required by Paragraph 35(a) was limited to the adequacy of the notice for purposes of the Paragraph 35(d) mediation; it did not extend to Paragraph 35(b) fee shifting. *Geldermann, Inc. v. Stathis*, 532 N.E.2d 366, 369 (Ill. App. 1st Dist. 1988) (arbitration context) (citing *Dickinson v. Hanhad Securities, Inc.*, 661 F.2d 638, 641 (7th Cir. 1981)).

*Second*, it is this Court's view that strict compliance with Paragraph 35(a) was intended by the parties when they drafted the Agreement. As Kempner recognizes in its brief: "[i]t is presumed that the terms and provisions of a contract are purposely inserted and that the language was not idly employed" (Kempner's Mem. at 3 (citing *Kimball Hill Management Co. v. Roper*, 733 N.E.2d 458, 462-63 (Ill. App. 2d Dist. 2000)). "When interpreting contracts, contractual provisions for attorneys' fees must be strictly construed and the [C]ourt must determine the intention of the parties with respect to the payment of fees" (Kempner's Mem. at 3 (quoting, *Grossinger Motorcorp.*, 607 N.E.2d at 1348)).

And, indeed, strict compliance with Paragraph 35(a) is essential to the purpose of the fee-shifting mechanism in Paragraph 35(b). An "aggrieved" party is required to give pre-litigation Paragraph 35(a) notice to the other party, so that the possibility of early settlement of an aggrieved's claims is maximized. The predicate of fee shifting under Paragraph 35(b) is that a party unwisely failed to settle through the Paragraph 35(a) notice and offer process (either by an aggrieved party turning down an offer that the aggrieved party did not beat at trial, or by an accused party making

a low-ball offer that the aggrieved party beat at trial). The measuring stick that Paragraph 35(b) employs for fee shifting, which is to compare the litigation result with the offer made during the Paragraph 35(a) process, cannot be properly used if the quality of the offer may have been affected by inadequacies in the notice. Thus, if an aggrieved party, such as Kempner, fails to serve the accused party with proper notice of the damages and attorneys' fees sought and the documents supporting the claim, then the aggrieved party has breached not only the technical requirements of Paragraph 35(a), but also the substantive purposes underlying those technical requirements.

Of course, in this case, we can never know whether a notice that complied with Paragraph 35(a) would have altered the course of events. Kempner no doubt would argue that a better notice would not have caused a better mediation result. But, we should not have to guess about that question – Kempner could have avoided this problem by complying with Paragraph 35(a). Nor do we find that strict compliance with Paragraph 35(a) creates a "draconian" result by depriving Kempner of the ability to invoke Paragraph 35(b); rather, that is a result of Kempner's own making, by failing to comply with Paragraph 35(a).

**B.**

That said, even if Cingular's August 28, 2002 letter served as a waiver of Kempner's notice obligations under Paragraph 35(a), Kempner would still not be able to recover fees under Paragraph 35(b). Kempner's argument that it qualifies for fee shifting under Paragraph 35(b) rests on two arguments. *First*, Kempner argues that the litigation outcome and the settlement offer must be compared in the aggregate: that is, without regard to what claims Kempner and Cingular each asserted as the "aggrieved" party. *Second*, Kempner argues that it is entitled to fee shifting under Paragraph 35(b), even though it obtained no net positive recovery at trial, because the net amount

11

it owes as a result of the jury verdict ($68,146.17) is less than the net amount for which Cingular offered to settle all claims and counterclaims ($92,000.00). As we explain below, we do not accept either argument.

1.

We begin with the question of what constitutes a "recovery" under Paragraph 35(b). The term "recover," as used in its ordinary sense in the English language, connotes a result that is measured by winning positive sums of money. *See* M. WEBSTER'S COLLEGIATE DICTIONARY at 977 (10th Ed.) (defining "recover" as "to obtain a final judgment in one's favor"). We do not believe that word was given a different meaning by the parties in Paragraph 35(b).

We also note that the word "recovery" in the last sentence of Paragraph 35(b) refers back to the prior sentence in that paragraph, which shifts fees from the "accused" to the "aggrieved" party if "the amount tendered in the settlement offer is greater than or equal to the *actual damages found by the trier of fact*" (Kempner's Mem., Ex. A, ¶ 35(b)) (emphasis added). That sentence further confirms that Paragraph 35(b) contemplates that, in order to shift fees to the accused party, the aggrieved party must recover "actual damages." When viewing the overall litigation outcomes and the settlement offer in the aggregate, as Kempner asks us to do, Kempner had no recovery of "actual damages" – rather, Kempner had to pay Cingular. We do not interpret the word "recovery" in Paragraph 35(b) as simply doing better than one would have done had the settlement offer been accepted, as Kempner argues (Kempner Mem. at 4).

12

2.

We also are unpersuaded by Kempner's argument that the *aggregate* trial result should be measured against the *aggregate* settlement offer by Cingular. Kempner bases this argument, and its claim under Paragraph 35(b) for fees incurred on the complaint and counterclaims, on the premise that Kempner was the only "aggrieved" party for purposes of Paragraph 35. Kempner argues that because Cingular admittedly never provided Kempner with proper notice of its claims under Paragraph 35(a), and Kempner never waived Cingular's compliance with the notice requirement, Kempner is the only "aggrieved" party. That argument simply is not supported by the language of Paragraph 35(b).

Kempner cannot be the aggrieved party as to Cingular's counterclaims. The August 28, 2002 letter combines two elements: a valuation of Kempner claims and an offer to pay $38,000.00 on them, and a demand by Cingular that Kempner pay $130,000.00 on counterclaims that Cingular would assert absent settlement, with the offer and demand netting out as a $92,000.00 payment by Kempner to settle all claims. Kempner was not the aggrieved party on counterclaims that Cingular threatened to file absent settlement; it was the accused party. The fact that Cingular did not satisfy Paragraph 35(a)'s notice requirements with respect to its counterclaims deprives Cingular of the right to invoke Paragraph 35(b) with respect to those counterclaims; but, it does not transform Kempner into the "aggrieved" party on claims Cingular asserted and for which it sought recovery. Thus, Kempner cannot – in the role of an "aggrieved" party under Paragraph 35(b) – measure the *entire* litigation result against the *entire* settlement proposal, because both the *entire* litigation result and the *entire* settlement proposal include items on which Kempner plainly was not the aggrieved party.

To measure Kempner's "recovery" against the settlement in the aggregate (as to all claims, including those of Cingular) would do violence to the language of Paragraph 35(b). Paragraph 35 is careful to distinguish the aggrieved from the accused, and the claims and recovery of each from the other. The formula set forth in Paragraph 35(b) requires the Court to compare the claims of an aggrieved with the "actual damages found by the trier of fact" on those claims. Paragraph 35(b) does not contemplate or permit aggregation of claims filed by both an aggrieved and an accused to determine whether, when everything shakes out, the aggrieved is "better off" having gone to trial than settling the case. Consequently, even if Kempner could invoke Paragraph 35(b), at most Kempner could recover attorneys' fees on Kempner's own claims on which it was aggrieved, and not on the claims of Cingular.

**3.**

However, even under that scenario, Kempner could not shift fees under Paragraph 35(b). To apply only the Paragraph 35(b) formula in the context of this case, we would have to break down the August 28, 2002 letter into its major component parts: (a) the settlement offer that Cingular made on Kempner's claims ($38,000.00), and the settlement offer/demand that Cingular made on its own potential counterclaims ($130,000.00). This exercise is necessary because the formula set forth in Paragraph 35(b) requires the Court to identify the aggrieved and the accused parties. Separating out the claims on which Kempner was the aggrieved reveals that the amount Kempner recovered on all of his claims, $26,089.21, is less than the amount that Cingular offered to Kempner in settlement of its claims, $38,000.00. Thus, if we apply the formula in Paragraph 35(b) as it is written, to compare the trial result and settlement offer as the claims on which Kempner was "aggrieved," Kempner would still not be able to shift fees under Paragraph 35(b), because Kempner did not do better at

14

trial in terms of money damages than the $38,000.00 that Cingular offered in the August 28, 2002 letter *on Kempner's claims as the aggrieved*. Thus, Kempner cannot recover fees under Paragraph 35(b), even if we were to deem Cingular as having waived Kempner's failure to comply with Paragraph 35(a).[5]

## IV.

That brings us to Paragraph 24. Cingular seeks recovery only under Paragraph 24; and both parties agree that if Kempner cannot seek fees under Paragraph 35, it nonetheless may do so under Paragraph 24.[6] As stated, Paragraph 24 provides fee recovery for a prevailing party on all claims arising under the Agreement. In this case, the agency contract claims alleged by each party, and the results that were obtained, are as follows:

---

[5]We note that Cingular's August 28, 2002 proposal is not substantively different than it would have been had Cingular written two letters to Kempner: one proposing settlement of Kempner's claims for $38,000 and one demanding $130,000 in payment for Cingular's proposed counterclaims. In this situation, Kempner would not be able to measure recovery in the aggregate on all claims, including those of Cingular, but would, in fact, have to measure its own recovery against the amount that Cingular offered to Kempner in settlement. In other words, Kempner would have to measure the $26,089.21 Kempner "recovered" through the judgment on its claims as the aggrieved, against the $38,000.00 that Cingular offered in settlement of those claims. In that scenario, Kempner would not be able to recover fees under Paragraph 35(b), because it would have recovered less than what had been proposed.

We see no material difference between the single letter Cingular sent, and two discrete letters for purposes of applying Paragraph 35(b) here. The fact that Cingular chose to combine those proposals in one letter does not eliminate the need to separately assess the offers and trial outcome on Kempner's claims as the aggrieved.

[6]As an aside, it strikes the Court that an argument could have been made, by either party, that the other party's breach of Paragraph 35(a)'s obligations, in the strict sense, deprived that party of a meaningful opportunity to settle the case early, which is the purpose underlying that Paragraph 35. Although Paragraph 35 establishes its own consequence for such a breach when it makes Paragraph 35(a) a pre-requisite to claiming fees under Paragraph 35(b), there is an argument that a breaching party should not be able to recover any fees on its own claims under either Paragraph 24 or Paragraph 35 if it did not give the other party an opportunity to settle the case and mitigate the fee award. In other words, as indicated, a party cannot shift fees under Paragraph 24 if it did not comply with Paragraph 35(a). This argument, however, was not raised by the parties. And, neither party argues that the failure of the other party to comply with Paragraph 35(a) should have any consequences outside Paragraph 35. Thus, the Court will not pursue that point further.

## Kempner's Amended Complaint

| Count I   | Declaratory Judgement Claim | Voluntarily Dismissed |
|-----------|-----------------------------|-----------------------|
| Count II  | Injunction Claim            | Voluntarily Dismissed |
| Count III | Contract Claim              | Summary Judgment for Cingular |
| Count IV  | Contract Claim              | Summary Judgment for Cingular |
| Count V   | Contract Claim              | Jury Verdict for Kempner ($550.00 stipulated award) |
| Count VI  | Contract Claim              | Jury Verdict for Kempner ($4,413.21 stipulated award) |

## Cingular's Counterclaim

| Count I | Contract Claim | Jury Verdict for Kempner[7] |
|---------|----------------|-----------------------------|

Kempner thus may be able to claim prevailing party status under Paragraph 24 on two of its contract claims – Counts V (for commissions) and VI (for residuals) – and on Count I of Cingular's counterclaims (breach of the non-compete provision). Cingular, on the other hand, may claim prevailing party status on two of Kempner's contract claims – Counts III and IV.[8] We say "may" because each side has reserved its arguments on the issue of whether the other is a "prevailing party" on these claims, an if so, the fees that should be awarded.

---

[7] Cingular obtained a stipulated judgment of $94,235.38 on Count II of its counterclaim. But that counterclaim involves a contract claim that does not arise under the Agreement, and thus Cingular concedes that it may not seek fees under Paragraph 24 on that claim.

[8] Neither party may claim status as the prevailing party on Counts I and II of the amended complaint. The preliminary injunction ruling was a "split decision," affirming parts of each side's positions; and, in any event, a preliminary injunction ruling is not an adjudication on the merits (see Keefe-Shea Joint Venture v. City of Evanston, 773 N.E.2d 1155, 1160 (Ill. App. 1st 2002) ("the purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits")). Thereafter, the declaratory and injunctive claims were voluntarily dismissed. Neither side prevailed and neither side lost on those claims; and, thus, any fees generated in filing the claims cannot be claimed because the parties never tested their merits by a summary judgment motion or trial. Any fees spent defending those claims cannot be recovered either because Kempner, by dismissing those claims voluntarily, left Cingular without the opportunity to prevail on them. See Jackson v. Hammer, 653 N.E.2d 809, 817 (Ill. App. 4th Dist. 1995) ("A party can be considered a 'prevailing party' for the purposes of awarding fees when he is successful on any significant issue in the action and achieves some benefit in bringing suit, receives a judgment in his favor, or by obtaining an affirmative recovery") (citing Grossinger Motor Corp., 607 N.E.2d at 1348).

## CONCLUSION

For the reasons set forth above, the Court finds that Kempner cannot claim fees under Paragraph 35(b); and both parties are limited to the fee shifting provided in Paragraph 24 on the claims arising under the Agreement which they each prevailed. The Court reserves ruling on what recovery Kempner may have, if any, on the Agreement claims on which it obtained judgment (Counts V and VI of the complaint and Count I of the counterclaim), and what recovery Cingular may have, if any, in the Agreement claims on which it obtained a judgment (Counts III and IV of the complaint). A status is set for November 30, 2004 at 9:00 a.m.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: November 15, 2004**