

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KEMPNER MOBILE ELECTRONICS, INC., )
an Illinois corporation, )
)
      Plaintiff, )
)   No. 02 C 5403
vs. )
)   Magistrate Judge Schenkier
SOUTHWESTERN BELL MOBILE )
SYSTEMS, LLC, d/b/a CINGULAR )
WIRELESS f/k/a SOUTHWESTERN BELL )
MOBILE SYSTEMS, INC. d/b/a CELLULAR )
ONE-CHICAGO, )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

The extensive history of this litigation is set forth in earlier memorandum opinions issued by this Court,[1] and will be repeated here only insofar as necessary to an understanding of the current motion before the Court: plaintiff's motion for attorneys' fees and expenses pursuant to contract ("Pl.'s Motion") (doc. # 195).

In its decision interpreting the fee-shifting provisions of the Agency Agreement ("Agreement") between plaintiff ("Kempner Mobile") and defendant ("Cingular"), the Court ruled that the parties could seek an award of fees only on the following claims: (a) Kempner Mobile could seek fees and costs on its contract claims for Cingular's failure to pay commission (Count V) and failure to reimburse it for certain expenses (Count VI), and on Cingular's contract counterclaim

---

[1] *See Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Sys. LLC*, 02 C 5403, 2004 WL 2609188 (N.D. Ill. Nov. 16, 2004) (interpreting fee-shifting provisions of contract between the parties); *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Sys. LLC*, 02 C 5403, 2004 WL 434213 (N.D. Ill. Mar. 4, 2004) (ruling on post-trial motions); *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Sys. LLC*, 02 C 5403, 2003 WL 22595263 (N.D. Ill. Nov. 7, 2003) (summary judgment ruling); *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Sys. LLC*, 02 C 5403, 2003 WL 1057929 (N.D. Ill. Mar. 10, 2003) (preliminary injunction ruling).

(Count I); and (b) Cingular could seek fees and costs on Kempner Mobile's contract claims for breach of a "three-mile rule" (Counts III-IV). *Kempner Mobile*, 2004 WL 2609188, at \*8-9. Since that ruling, the parties have reached agreed resolutions regarding the attorneys' fees and costs on certain of those claims. The parties have agreed that Kempner Mobile will pay Cingular $34,585.44 in attorneys' fees and costs relating to Counts III and IV of the amended complaint, and that Cingular will pay Kempner Mobile $11,300.00 in attorneys' fees and costs relating to Count I of Cingular's counterclaim (Pl.'s Motion, Ex. 1: Joint Statement, ¶¶ 3, 5). The only remaining attorneys' fees and cost issues are the subject of Kempner Mobile's current motion.

In its motion, Kempner Mobile seeks an award of attorneys' fees and costs relating to its prosecution of Counts V and VI of the amended complaint. Kempner Mobile received jury verdicts establishing liability on those claims in November 2003; Cingular's post-trial motions attacking those liability verdicts were denied in March 2004. *See Kempner Mobile*, 2004 WL 434213, at \*11. Thereafter, the parties agreed on stipulated judgment amounts for each claim: $550.00 on Count V, and $4,413.21 on Count VI. Kempner Mobile claims that its victory on those counts makes it the "prevailing party," within the meaning of Paragraph 24 of the Agreement, and thereby entitles Kempner Mobile to recover from Cingular court costs and reasonable attorneys' fees relating to those claims. Kempner Mobile seeks to recover $48,141.49 in attorneys' fees and costs relating to the prosecution of those claims: (a) $38,520.00 in attorneys' fees for Count V, (b) $6,440.00 in attorneys' fees for Count VI, and (c) $3,181.49 in costs relating to both claims (Pl.'s Motion, Ex. 1; Joint Statement, ¶¶ 7-8). Cingular opposes Kempner Mobile's motion, asserting that Kempner Mobile did not "prevail" on Counts V and VI within the meaning of the Agreement, and that even

2

if Kempner Mobile were the prevailing party, the amount of fees and costs it seeks are not properly documented and/or are excessive.

For the reasons that follow, the Court finds that Kempner Mobile is the prevailing party on Counts V and VI within the meaning of Paragraph 24 of the Agreement, but that the attorneys' fees and costs that Kempner Mobile seeks must be reduced.

**I.**

We begin with the question of whether Kempner Mobile is the prevailing party on Counts V and VI within the meaning of the Agreement. The pertinent contract language is found in Paragraph 24 of the Agreement, which states – in relevant part – as follows:

> If any suitor's action shall be brought to enforce or declare any of the terms of this Agreement, to terminate this Agreement or to recover any damages sustained as a result of a default in the performance of any obligations under this Agreement, or a breach of any of the representations and warranties herein contained or otherwise pursuant to this Agreement, and accept as otherwise provided in Paragraph 35, the party not prevailing in such suit or action shall be liable to the prevailing party for the prevailing party's costs and expenses, including, without limitation, court costs and reasonable attorneys' and expert witnesses' fees . . . , the amount of which shall be fixed by the Court and shall be made part of any judgment rendered.

By its express terms, the Agreement is governed by Illinois law, and we therefore must apply principles of Illinois law that govern, in general, questions of contract interpretation, and in particular, fee-shifting provisions in contracts.

The interpretation of a contract is a question of law. A court "must initially determine, as a question of law, whether the language of a purported contract is ambiguous as to the parties' intent." *Quake Construction, Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990). "If no ambiguity exists in the writing, the parties' intent must be derived . . . as a matter of law, solely from

3

the writing itself." *Id.* In this case, neither of the parties asserts that Paragraph 24 is ambiguous, and thus we will determine the meaning of that paragraph – and the use of the term "prevailing party" within it – based on the contract language, without resort to extrinsic evidence.[2]

The Court "must consider the contract in the context of the entire agreement." *Weidner v. Szostek*, 614 N.E.2d 879, 881 (Ill. App. 1993). The Court cannot give the contract "a construction that would render the phrase superfluous or meaningless; we must give it some reasonable meaning." *Gray v. Nat'l Restoration Systems, Inc.*, 820 N.E.2d 943, 965 (Ill. App. 2004). A contract "should be given a fair and reasonable interpretation based on consideration of all its language and provisions." *Weidner*, 614 N.E.2d at 881. Accordingly, we consider the language of Paragraph 24 not simply in the abstract, but also in conjunction with other provisions in the Agreement, in an attempt to read the contract as a sensible whole.

Under Illinois law, the parties to a contract may provide that the party who successfully sues under the contract will recover its attorneys' fees and costs from the losing party. *Grossinger Motor Corp., Inc. v. American Nat'l Bank and Trust Co.*, 607 N.E.2d 1337, 1347-48 (Ill. App. 1992). However, because fee shifting is contrary to the general "American Rule" that each party bears its own attorneys' fees, contractual fee-shifting provisions are strictly construed. *Raffel v. Medallion Kitchens of Minnesota*, 139 F.3d 1142, 1147 (7th Cir. 1998); *Powers v. Rockford Stop-N-Go, Inc.*, 761 N.E.2d 237, 240 (Ill. App. 2001); *Jackson v. Hammer*, 653 N.E.2d 809, 817 (Ill. App. 1995); *Grossinger*, 607 N.E.2d at 1348. In determining the applicability of a contractual fee-shifting

---

[2]Neither party has offered extrinsic evidence as to the meaning of the term "prevailing party" as used in the Agreement, either to show that the term is in fact ambiguous, *see Joy v. Hay Group, Inc.*, 04-2114, 2005 WL797192, at *2 (7th Cir. Apr. 8, 2005) ("extrinsic evidence, . . . , is admissible to demonstrate that the contract may not mean what it says, provided the evidence used to show this is 'objective' in the sense of not being merely self-serving unverifiable testimony"), or to resolve any purported ambiguity that may be thought to exist.

provision, a court must "determine the intention of the parties with respect to the payment of the attorneys' fees." *Jackson*, 653 N.E.2d at 817; *Grossinger*, 607 N.E.2d at 1348; *Helland v. Helland*, 573 N.E.2d 357, 359 (Ill. App. 1991).

That said, we note that there is some authority that even when the intent of the contracting parties is for there to be fee shifting, a fee-shifting provision in a contract is "enforced at the discretion of the trial court." *See, e.g., Powers*, 761 N.E.2d at 240. Other cases addressing fee-shifting provisions make no mention of enforcement of contractual fee-shifting provision as being discretionary, *e.g., Jackson*, 653 N.E.2d at 817-18, or suggest that no discretion is involved. *See, e.g., J.B. Esker & Sons, Inc. v. Cle-Pa' Partnership*, 757 N.E.2d 1271, 1277 (Ill. App. 2001) (emphasis added) ("[W]hen a contract calls for the shifting of attorney fees, a trial court *shall* award all reasonable fees"). We confess that it would strike us as odd that a court, having determined that the parties to a contract intended that attorneys' fees should be shifted in a given situation, would then have the discretion to ignore that contractual intent. However, because there is Illinois authority suggesting that trial courts possess that discretion, we will consider, *first*, whether Kempner Mobile was the prevailing party within the meaning of the Agreement on Counts V and VI, and *second*, if so, whether there are factors that persuade the Court to exercise its discretion to decline to shift attorneys' fees.

## A.

We have little trouble finding that under the language of the Agreement, Kempner Mobile is the prevailing party on Counts V and VI. In construing fee-shifting provisions in other contracts, Illinois courts have held that a party can be considered a prevailing party "when he is successful on any significant issue in the action and achieves some benefit from bringing suit, receives a judgment

5

in his favor, or by obtaining an affirmative recovery." *Jackson*, 653 N.E.2d at 817; *Grossinger*, 607 N.E.2d at 1348. In this case, the two contract claims on which Kempner Mobile received judgments were not significant when viewed in terms of the other issue in the case or in terms of the amount recovered. However, we cannot say they were insignificant to Kempner Mobile. And, Kempner Mobile did obtain jury verdicts establishing liability on both of those claims, and obtained an affirmative (albeit small) recovery. The party who receives a judgment in its favor is usually considered the prevailing party, *Tomlison v. Dartmore Construction Corp.*, 645 N.E.2d 376, 383 (Ill. App. 1994), and we see nothing in the language of Paragraph 24 of the Agreement to suggest otherwise.

Cingular argues against this interpretation, asserting that "the parties here did not intend that any recovery, however, minimal, would provide a blank check for an award of fees" (Cingular Mem. at 6). That argument expresses a theme that runs throughout Cingular's argument: the proposition that a plaintiff's recovery must meet a certain threshold amount under Paragraph 24 in order for the plaintiff to be considered a prevailing party. However, that argument finds no textual support in Paragraph 24 of the Agreement. Under Illinois law, when the contract language is unambiguous (and the parties do not suggest otherwise here), "a written agreement is presumed to speak the intention of those who signed it, and the intention must be determined from the language used." *J.B. Esker & Sons, Inc.*, 757 N.E.2d at 1279. Paragraph 24 contains no language stating that a plaintiff's monetary recovery must meet a certain level, or what that level must be, in order to meet the prevailing party standard.

What's more, the other fee-shifting provision of the Agreement, found in Paragraph 35, undermines Cingular's interpretation of Paragraph 24. Paragraph 35(b) makes the amount of

6

recovery, as compared to a prior settlement offer, the determining factor in fee shifting under that paragraph. Under Paragraph 35(b), if a party recovers an amount that exceeds the opposing side's settlement offer, then the recovering party is entitled to have the opposing side pay its reasonable attorneys' fees; if the recovery is less than or equal to the prior settlement offer, then the party who obtains the recovery nonetheless must pay the other side's reasonable attorneys' fees. Thus, the language of Paragraph 35(b) does what the language of Paragraph 24 does not: it requires that the amount of recovery to be measured against a fixed, objective standard in determining whether (and in what direction) attorneys' fees will be shifted. The fact that the parties included such a standard in Paragraph 35, but not in Paragraph 24, of the Agreement is telling evidence that the parties did not intend to measure the amount of recovery against some (unstated) threshold standard in order for fee shifting to apply under Paragraph 24.

That is particularly so when we consider that the prevailing party fee-shifting provision in Paragraph 24 applies "except as otherwise provided in Paragraph 35." That exception further underscores that, while measuring a recovery against some objective standard was the parties' intended mechanism for deciding fee shifting under Paragraph 35, it was not what they bargained for in determining fee shifting under Paragraph 24. For these reasons, we find that Kempner Mobile meets the contractual definition of a prevailing party on Counts V and VI.[3]

---

[3] We disagree with Cingular's contention that this interpretation provides a "blank check for an award of fees" whenever there is a recovery, "however minimal" (Cingular Mem. at 6). Paragraph 24 does not provide that a prevailing party can recover any and all fees incurred, but only those fees that are reasonable. Moreover, as we will see below, the extent of the recovery bears on the amount of fees that are awarded to a prevailing party.

**B.**

Having found that Kempner Mobile is the prevailing party on Counts V and VI, within the meaning of the fee-shifting provision in Paragraph 24, we next consider whether we should make the discretionary decision to decline to enforce that provision in this case. Cingular offers a variety of arguments as to why there should be no fee shifting here, but they all reduce to the same proposition: that Kempner Mobile simply did not recover enough to justify fee shifting. We do not find Cingular's arguments persuasive. In explaining our reasoning for that conclusion, we address Kempner Mobile's prevailing party status on Counts V and VI separately – as does Cingular.

**1.**

With respect to Count VI, Cingular asserts that the stipulated amount of Kempner Mobile's recovery – $4,413.21 – does not support a shifting of fees because it is "no more than a nuisance value recovery" (Cingular Mem. at 8), and is less than the $6,440.00 in attorneys' fees that Kempner Mobile allegedly incurred in order to recover that amount (Cingular Mem. at 9). As for the first argument, we note that the stipulated judgment amount on Count VI is precisely the amount that Kempner Mobile claimed shortly before trial in November 2003 (Cingular Mem., Ex. A at 2). Indeed, the judgment amount is within a few dollars of the $4,500 amount of damages that Kempner Mobile alleged on this contract claim in the amended complaint filed in state court, and removed to this Court in July 2002 (doc. # 1: Amended Complaint, ¶ 59). To be sure, Cingular was entitled to force Kempner Mobile to try that claim, and to obtain a jury verdict on liability, before agreeing to pay by stipulation the claimed damage amount. However, Cingular's choice to force a trial on this contract claim does not strike us a good reason to exercise discretion to allow Cingular to avoid fee shifting under Paragraph 24 of the Agreement.

8

We also do not find persuasive the point that Kempner Mobile's claimed attorneys' fees exceed the judgment amount. Under Illinois law, a damages award does not set an absolute ceiling on a fee award. *Pitts v. Holt*, 710 N.E.2d 155, 157-58 (Ill. App. 1999). The Seventh Circuit has explained why that rule makes sense. Because the cost of litigating a claim has a fixed component, a reasonable attorney's fee in the sense of the minimum required to establish a valid claim can exceed the value of the claim." *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000). The Seventh Circuit explained that the purpose of fee shifting for a party who prevails on even a small claim is to enable such claims to be litigated, and that this purpose would be "thwarted by capping the attorneys' fees award at the level of the damages award." *Id.* Accordingly, while the relationship of the attorneys' fees Kempner Mobile incurred to the result it obtained is a factor we will consider below in assessing the reasonableness of the fees sought in connection with Count V, we do not consider that relationship sufficient reason to deprive Kempner Mobile of any attorneys' fees whatsoever in connection with the prosecution of Count VI.

**2.**

Cingular raises similar arguments with respect to Count V, but at greater length – and with a greater vehemence. Cingular asserts that Kempner Mobile should not be entitled to fee shifting because: (a) the $550.00 stipulated judgment shows that the result on Count V was essentially a "draw," with Kempner Mobile winning on liability but Cingular essentially winning on damages (Cingular Mem. at 4-5); (b) the $550.00 stipulated judgment was in fact a nuisance value settlement (*Id.*, at 5-6); and (c) fee shifting is not warranted because the "trivial" recovery of $550.00 pales in comparison to the damages Kempner Mobile claimed (nearly $113,000.00), and the fees incurred

9

to prove the claim ($38,520.00) (*Id.*, 7-8).[4] While Cingular's arguments present a closer question on fee shifting as to Count V, for the reasons set forth below, we conclude that they do not warrant a total denial of fee shifting.

The lead point in all of Cingular's arguments is the fact that the stipulated judgment amount was only $550.00, which is far less than the nearly $113,000.00 claimed by Kempner Mobile as late as the eve of the November 2003 trial (*see* Cingular Mem. Ex. A, at 2). The parties have not advised the Court as to how they reached the stipulated amount of $550.00, but we have reason to question whether that number reflects only an agreed valuation of Kempner Mobile's commission claim.

On August 28, 2002, shortly after the commencement of this lawsuit, Cingular proposed to settle the dispute with Kempner Mobile. In its written proposal, Cingular valued its claim against Kempner Mobile for payment on equipment purchases (which later became Count II of Cingular's counterclaim) at approximately $130,000.00; valued Kempner Mobile's commission claim against Cingular (Count V of the amended complaint) at $38,000.00; and proposed a settlement that netted out those numbers with a $92,000.00 monetary payment by Kempner Mobile to Cingular. *Kempner Mobile*, 2004 WL 2609188, at *4. In its counterclaim, filed March 28, 2003, Cingular valued its equipment purchase counterclaim in Count II at $126,242.00 (doc. # 47: Counterclaim, ¶¶ 38, 48-52). And, in the final pretrial order filed October 28, 2003, Cingular valued its equipment counterclaim at $126,242 (doc. # 77: Final Pretrial Order, Ex. 7).[5] The amount of the stipulated

---

[4]Cingular also argues that Kempner Mobile has not paid all of the fees charged, which shows that the amount sought is not commercially reasonable (Cingular Mem. at 8). However, that argument goes to the reasonableness of the fees and not whether fees should be shifted at all. Accordingly, we consider that argument below in deciding the amount of reasonable attorney's fees in connection with the prosecution of Count V.

[5]There is a typographical error in the pretrial order, in which Cingular lists a damage claim of $330,000.00 on Count II of the counterclaim and $126, 242.00 on Count I of the counterclaim.

judgment on Cingular's equipment claim, $94,235.38, is approximately $32,000.00 less than the amount Cingular asserted to be its true measure of damage.

In light of this factual background, we believe that the stipulated judgment on Cingular's equipment claim of $94,235.38 – like the settlement offer by Cingular in 2002 – likely reflects the amount Cingular claimed due on the equipment counterclaim, reduced by the value the parties attributed to Kempner Mobile's claim in Count V for commissions. Therefore, the true value of the jury verdict that Kempner Mobile received on its commission claim in Count V may actually be in the range of $32,000.00 (reflecting the difference between Cingular's equipment counterclaim of $126,242.00 and the stipulated judgment on that claim of $94,235.38).

If that is so (and given the history we have recited above, we believe that it is more likely than not the case), that fact defeats Cingular's arguments against fee shifting on Count V. It is difficult to call the resolution of Count V a "draw" if that resolution involved not only a jury verdict for Kempner Mobile on liability, but had a value in the overall resolution of the case of some $32,000.00. A victory on Count V that had that value to Kempner Mobile (some $32,000.00) would not be so disproportionate as to the amount sought by Kempner Mobile (approximately $113,000.00) as to suggest that fee shifting is inappropriate. *Cf. Tuf Racing*, 223 F.3d at 591-92 (upholding fee shifting under the Illinois Motor Vehicle Franchise Act where a jury awarded $137,000.00 on a termination claim for which the plaintiffs sought some $1.2 million in damages). And, the fact that the fees allegedly expended to obtain that benefit ($38,520.00) somewhat exceeded the amount of the benefit obtained from the liability verdict in Count V (some $32,000.00) would not persuade the Court that its discretion would be well exercised by depriving Kempner Mobile of any contractual

fee shifting. *Cf. Tuf Racing*, 223 F.3d at 592 (affirming fee award of some $391,000.00 on a $137,000.00 verdict).

That said, we also consider the (less likely) possibility that the stipulated judgment amounts on Kempner Mobile's commission claim in Count V and Cingular's equipment claim in Count II of the counterclaim are wholly unrelated, and that Kempner Mobile accepted a stipulated award of $550.00 on its commission claim – on which it had already established liability – solely because Kempner Mobile believed it likely could not prove a greater amount. In that situation, we still would not exercise our discretion to deprive Kempner Mobile of a fee shifting on Count V. We have several reasons for that conclusion.

*First*, one purpose of a fee-shifting provision is to enable small claims to be litigated. *Tuf Racing*, 223 F.3d at 592. Thus, to deprive a party of fee shifting merely because the claim is a small one would undermine the purposes of contractual fee shifting.

*Second*, we recognize that there are cases suggesting that a plaintiff who makes a demand so large that it is overreaching properly can be denied fee shifting, on the theory that it is "right to penalize a plaintiff for putting the defendant to the bother of defending against a much larger claim than the plaintiff could prove." *Tuf Racing*, 223 F.3d at 592; *see also Bankcard America, Inc. v. Universal Bank Card Systems, Inc.*, 203 F.3d 477, 486 (7th Cir. 2000) (denying fee shifting to a party who sought $25.6 million on a contract claim and received a verdict of $1,115,000 was not entitled to contractual fee shifting, as the plaintiff "clearly overreached"). In this case, Kempner Mobile sought approximately $113,000.00 on the commission claim, and the stipulated judgment was only about one-half of one percent of that amount. However, we have difficulty concluding that this means Kempner Mobile "clearly overreached" on the commission counterclaim when in August

12

2002 Cingular, which certainly had access to the records that would show commission information, valued the commission claim at some $38,000.00 when proposing a settlement.

*Third*, to the extent that Cingular's valuation of Kempner Mobile's commission claim dramatically changed at some point between August 2002 (when it made the settlement proposal) and the trial in November 2003, Cingular could have employed an offer of judgment under Federal Rule of Civil Procedure 68 to try to shift any further fee exposure on Count V to Kempner Mobile. Under Rule 68, "a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued." FED. R. CIV. P. 68. If the offer is not timely accepted, and the plaintiff recovers a judgment that "is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." The plain language of Rule 68 does not require a defendant to make an all or nothing offer on all claims in a case, but allows offers to be made with respect to fewer than all parties, or fewer than all claims. Thus, Cingular could have made an offer of judgment as to Count V if it believed that claim was too small to merit the cost of trial.

Moreover, in lawsuits involving a fee-shifting statute, the word "costs" – as used in Rule 68 – includes attorneys' fees. *Marek v. Chesney*, 473 U.S. 1, 9-12 (1985). In *Marek*, the Supreme Court held that "the most reasonable inference to the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute *or other authority*. In other words, all costs properly awardable in an action or to be considered within the scope of Rule 68 'cost'" *Id*. at 9 (emphasis added). That reasoning would apply not only to fee-shifting statutes, but also to fee-shifting contracts (which would fall under the rubric of "other authority"). In this case, Paragraph 24 plainly defined costs to include attorneys' fees, as it states that the prevailing party

13

could recover from the party not prevailing "costs and expenses, including without limitation, court costs and reasonable attorneys' and expert witnesses' fees." To the extent that Cingular argues that it should not have to pay Kempner Mobile's fees for litigating what turned out to be such a small contract claim, Cingular had the ability to shift any of its attorneys' fee exposure on Count V by making a Rule 68 offer of judgment, and thereby relieving Kempner Mobile of the necessity of proving liability at trial.

*Fourth*, we reject Cingular's argument that the stipulated damage amount of $550.00 can be analogized to a "nuisance settlement." The problem with that analogy is that the stipulated judgment here was only on the question of damages; there was no stipulation on liability. Rather, Kempner Mobile was required to pursue a jury trial to obtain a liability verdict before any agreement was reached on the damage amount. For this reason, Cingular's citation of *Fletcher v. City of Fort Wayne*, 162 F.3d 975 (7th Cir. 1998), for the proposition that a party cannot be "prevailing" based on a nuisance value settlement (Cingular Mem. at 5-6), is inapt. In *Fletcher*, the plaintiffs had accepted a Rule 68 offer of judgment, which under governing law is a settlement. 162 F.3d at 977. The Seventh Circuit specifically contrasted a Rule 68 offer of judgment that produces a settlement with a "victory on the merits at trial." *Id.* at 976. And that is what Kempner Mobile achieved here on Count V: a victory on the liability merits at trial.

*Fifth*, we have considered the Seventh Circuit authority suggesting that the litigant who wins an amount less than ten percent of his initial demand "either is not a prevailing party for purposes of fee-shifting statutes or should be treated *as if* he had not prevailed." *Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999) (emphasis in original); *see also Bankcard America, Inc.*, 203 F.3d at 486 (citing *Perlman* as authority for denying contractual fee shifting). However, in *Perlman*, the Seventh

Circuit made clear that the "ten-percent" analysis is not a bright-line rule, and that failure to meet that threshold does not mean that the district court is "forbidden" to treat the plaintiff as a prevailing party. 185 F.3d at 860. More recently, the Seventh Circuit has confirmed that this ten-percent analysis is not a bright-line test, but rather is to be treated "merely as a factor to consider along with other factors weighing for or against an award of attorneys' fees." *Tuf Racing*, 223 F.3d at 592. While we consider that the stipulated judgment amount did not come close to approaching ten percent of the claimed damages, in light of the foregoing considerations, we do not find that factor a persuasive reason to deprive Kempner Mobile of any fees for its pursuit of Count V of the amended complaint.

Accordingly, we find that under a strict interpretation of Paragraph 24 of the Agreement, Kempner Mobile is the prevailing party on Counts V and VI of the amended complaint, and that none of the factors cited by Cingular persuades the Court to exercise its discretion not to enforce that fee-shifting provision. We conclude therefore that Kempner Mobile is entitled to recover reasonable attorneys' fees and costs for its pursuit of Counts V and VI of the amended complaint.

## II.

The party seeking attorneys' fees bears the burden of presenting evidence from which the reasonableness of the fees can be determined. *J.B. Esker & Sons, Inc.*, 757 N.E.2d at 1277. The determination of reasonableness of the fees requested is a matter committed to the trial court's discretion. *Id.; see also, Mercado v. Calumet Federal Savings & Loan Association*, 554 N.E.2d 305, 312 (Ill. App. 1990).

In determining whether a fee request is reasonable, we begin with an examination of the plaintiff's description of "the services performed, by whom they were performed, the time expended

15

thereon and the hourly rate charged therefore." *Kaiser v. MEPC American Properties, Inc.*, 518

N.E.2d 424, 427 (Ill. App. 1987). But, our analysis does not end there. We also must consider a

number of additional factors:

> (1) the skill and standing of the attorney employed, (2) the nature of the
> cause, (3) the novelty and difficulty of the questions, (4) the amount and
> importance of the subject matter, (5) the degree of responsibility and the
> management of the case, (6) the time and labor required, (7) the usual and
> customary charges in the community, and (8) the benefits resulting to the
> client.

*Powers*, 761 N.E.2d 237, 240 (Ill. App. 2001); *see also Kaiser*, 518 N.E.2d at 428. Moreover, the

Seventh Circuit has observed that "the best guarantee of reasonableness is willingness to pay" by the

party who incurred the fees. *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d

150, 153 (7th Cir. 1996). The reasoning is that the willingness of a party to incur and pay for fees,

without any guarantee of reimbursement, is evidence that the fees are reasonable, and are not

overstated or influenced by other considerations. *Medcom Holding Co. v. Baxter Travenol

Laboratories, Inc.*, 200 F.3d 518, 521 (7th Cir. 1999).

Against the backdrop of these standards, we consider in turn Kempner Mobile's request for

attorneys' fees on Count VI, its request for attorneys' fees on Count V, and its request for an award

of costs.

**A.**

Kempner Mobile allocates 32.2 hours of time to the prosecution of the claim for Count VI

for reimbursement of expenses. The attorneys who devoted that time, Messrs. Drost and Laue, each

devoted approximately the same amount of time to the claim (16 and 16.2 hours, respectively), and

each billed at the rate of $200.00 per hour. Cingular does not challenge the reasonableness of the

rates charged by Messrs. Drost and Laue. Cingular challenges 7.4 of the hours devoted to the prosecution of the claim (all by Mr. Laue) on the ground that those amounts are "entirely unrelated" to the claim for expenses (Cingular Mem. at 10 and Ex. B).

In considering those challenges, we note that the contemporaneous time records kept by Kempner Mobile's attorneys did not allocate time spent to each of the ten counts of the amended complaint and the three counts of the counterclaim. Therefore, any after-the-fact allocation of time among those counts will inevitably be imprecise, as will be the descriptions that link the work done to the particular claims in the case. Cingular implicitly recognizes that fact, as it does not challenge the vast majority of the time entries as being unrelated to the claims for expenses. In reviewing the entries that Cingular challenges, we have difficulty discerning why the challenged entries are, in Cingular' view, objectionable when other very similar time entries and descriptions have not been challenged. That said, we have reviewed the specific challenges, and find that they largely pertain to discovery matters that well may have involved the expense claims in Count VI. We therefore reject Cingular's challenges to specific entries of time claimed for work on the expense reimbursement claim in Count VI.[6]

We are then left with the question of whether the $6,440.00 sought for prosecution of the expense claim should be reduced based on other factors. The expense reimbursement claim was a

---

[6]One specific challenge that Cingular makes to Kempner Mobile's time allocation is one hour allocated to the expense claim in Count VI and one hour to the commission claim in Count V on August 20, 2002, in connection with preparing for a temporary restraining order hearing on August 21 (Cingular Mem. at 10). Cingular claims that the temporary restraining order hearing was unrelated to the commission and expenses claim. However, one of the issues addressed at the August 21 hearing was whether Kempner Mobile would receive a preliminary injunction requiring payment of $50,000.00 based on amounts then allegedly due and owing from Cingular to Kempner Mobile – a preliminary injunction that the Court entered (*see* doc. # 41: 08/21/02 Order). Thus, Cingular's assertion that preparation on August 20, 2002 for the August 21 hearing could not have involved work on the commission or expense claims is incorrect.

straightforward one that did not involve novel or complex issues. That said, we think it would be difficult for any attorney to prosecute a contract claim from its inception, through discovery, through the filing of a final pretrial order, and a jury trial in federal court, for less than $6,440.00. And, while the attorneys' fees sought do exceed the amount involved in the litigation, there nonetheless is a reasonable connection between the amount spent and the amount recovered. And, as Illinois courts have held, "the damages award does not cap the fee award." *TufRacing*, 223 F.3d at 593, *citing Pitts v. Holt*, 710 N.E.2d 155 (Ill. App. 1999). Thus, on Count VI, we award the full amount of fees sought, $6,440.00, which for the reasons set forth above, we conclude are reasonable with respect to the claim prosecuted in Count VI.

## B.

We now consider the attorneys' fees sought in connection with Count V. Kempner Mobile seeks a total of $38,520.00, based on 118.2 hours spent by Mr. Drost and 74.4 hours by Mr. Laue, both again at the rate of $200.00 per hour. Again, Cingular does not challenge the reasonableness of the rates charged by Messrs. Drost and Laue. Cingular does challenge a number of the entries regarding time allocated to the commission claim: Cingular challenges 64.9 of the 192.6 hours sought.

As with the challenge to the entries on the expense reimbursement claim, all of Cingular's challenges to specific entries on the commission claim – with the exception of one entry by Mr. Drost on October 8, 2003 for a total of 1.2 hours – involve time claimed by Mr. Laue. Our discussion of Cingular's challenges to Kempner Mobile's entries of time on the expense claim apply equally to Cingular's challenges to the entries on the commission claim: we can discern no particular rhyme or reason as to why Cingular challenged certain entries, and left others

18

unquestioned. When we look at the entries that Cingular does not challenge, we have difficulty concluding that there is something defective about the ones that it does challenge. Based on our knowledge of the prosecution of the case (which this Court has handled virtually since its removal from state court to federal court in August 2002), and understanding that there will be a level of imprecision inherent in an after-the-fact allocation of time among multiple claims, we are satisfied that the time scheduled is reasonably related to the commission claim. In so concluding, we note that Cingular does not challenge Kempner Mobile's assertion (*see* Pl.'s Motion, ¶ 6) that the amount Kempner Mobile allocates to the prosecution of the commission and expense claims in Counts V and VI (a total of $44,960.00) is similar to the amount that Cingular spent in defense of those claims (approximately $39,000.00).

We therefore address whether there are other considerations that persuade us that the fees should be reduced. We consider the fact that the commission claim was by far not the most important claim in the case, either in terms of what Kempner Mobile sought or what it ultimately achieved. In addition, while preparing and trying the commission claim involved review and analysis of a substantial number of documents, the basic issues were not novel or complex. As to whether the fees sought bear a "reasonable connection" to the amount involved in the commission claim, *J.B. Esker & Sons, Inc.*, 757 N.E.2d at 1277, that depends on whether the real value of the liability verdict achieved on the commission claim is the $550.00 stipulated judgment (in which case there would be no reasonable connection), or whether the true value of the liability verdict on Count V was in providing an offset that reduced by some $32,000.00 Kempner Mobile's obligation on Cingular's equipment counterclaim (in which case there would be a reasonable connection). As we explained above, we believe it more likely than not that the true value of the liability verdict was

19

far more than the stipulated judgment amount; however, we cannot be certain that that is so, and therefore we take into account both possibilities in determining the reasonable fees to be awarded on Count V.

Finally, we consider the point that Kempner Mobile has shown payment only of about $79,000.00 of the $390,000.00 that Kempner Mobile was billed by its attorneys for the prosecution and defense of all claims in the litigation. In response, Kempner Mobile argues that the client in fact paid more than $79,000.00 in fees, and that the checks submitted in the fee petition are simply illustrative examples to show that Kempner Mobile paid more than the amount of fees being sought here (Pl.'s Reply Mem. at 4). However, the checks that Kempner Mobile has submitted (Pl.'s Motion, Appendix C) span dates from May 4, 2002 (when the representation commenced) through July 21, 2004 (shortly before the second trial in August 2004). While Kempner Mobile says it could produce checks showing more payment was made, Kempner Mobile has not done so.

Kempner Mobile also argues that under Illinois law, the key question is whether one becomes obligated to pay fees, and not whether the fees are in fact paid (Pl.'s Reply Mem. at 4). However, in order to have confidence that fees incurred are commercially reasonable, there must be evidence that they not only were incurred but in fact paid. *See Medcom*, 200 F.3d at 521 (emphasis added) (in analyzing a contractual fee-shifting issue under Illinois law, the Seventh Circuit noted that "[o]ne indicator of reasonableness [of the fees sought] is that [plaintiff] *paid* all of these bills at a time when its ultimate recovery was uncertain"). The failure of Kempner Mobile to document more fee payments gives us concern about whether Kempner Mobile would have paid (and in fact, did pay) $38,000.00 in attorneys' fees to prosecute a commission claim that, at most, turned out to have a value of $32,000.00.

20

In light of all of these considerations, the Court finds that the attorneys' fees sought by Kempner Mobile on Count V should be reduced from $38,520.00 to $20,000.00, which is an amount that we conclude reasonably takes into consideration the time devoted to prosecuting the commission claim; the nature of the claim that was prosecuted; the small $550.00 stipulated damage award, and (in our view) the likelihood that the true value of the liability verdict on the commission claim in fact had a much higher value, closer to $32,000.00; and the failure of Kempner Mobile to better document payment of fees incurred.

## C.

Finally, we address the request for costs by Kempner Mobile, totaling $3,181.49 on both the commission and the expense claims. Cingular challenges $810.66 of the claimed costs, on the grounds that those particular challenged costs were inadequately explained and documented (Cingular Mem. at 11 n.8 and Ex. C). However, the parties stipulated that costs could be awarded without the submission of a formal bill of costs pursuant to 28 U.S.C. § 1920 (Pl.'s Motion, Ex. 1, Joint Statement, ¶ 6). As with the challenges by Cingular to certain time entries, we are at a loss to understand the basis for Cingular's challenge to certain entries which have no less documentation or detail than do other entries which have gone unchallenged. Accordingly, we overrule Cingular's objections to the costs, and award the full amount of costs sought of $3,181.49.

## CONCLUSION

For the foregoing reasons, the Court grants Kempner Mobile's motion (doc. # 195). The Court holds that Kempner Mobile is the prevailing party, under Paragraph 24 of the Agreement, on the contract claims in Counts V and VI of the amended complaint, and is entitled to an award of reasonable attorneys' fees and costs on those claims. Based on this ruling, and on the stipulation

reached by the parties as to the attorneys' fees and cost awards on Counts III and IV of the amended complaint and on Count I of the counterclaim, we enter the following award of attorneys' fees and costs:

    **A.**    By agreement, the Court awards Cingular $29,085.13 in attorneys' fees and $5,500.31 in costs, for a total of $34,585.44, to be paid by Kempner Mobile for attorneys' fees and costs relating to Count III and IV of the amended complaint.

    **B.**    The Court awards Kempner Mobile a total of $36,840.00 in attorneys' fees and $4,081.49 in costs, for a total of $40,921.49, for attorneys' fees and costs on the following claims:

    1.    By agreement, the Court awards Kempner Mobile $10,400.00 in attorneys' fees and $900.00 in costs, for a total of $11,300.00, for attorneys' fees and costs relating to Count I of Cingular's counterclaim; and

    2.    Over Cingular's objection, the Court awards Kempner Mobile $26,440.00 in attorneys' fees and $3,181.49 in costs, for a total of $29,621.49, for attorneys' fees and costs relating to Counts V and VI of the amended complaint.[7]

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: April 19, 2005**

---

[7]The parties have agreed to waive any right to seek attorneys' fees and costs associated with their efforts to recover attorneys' fees and costs, as well as their right to appeal this Court's ruling on attorneys' fees and costs except as to the awards relating to Counts V and VI of the amended complaint (Pl.'s Motion, Ex. 1, Joint Statement, ¶¶ 9-10).